Sandra GARRITY, a developmentally disabled citizen, by her parents and guardians, Melton and Arlene Garrity, Nancy Haggerty, a developmentally disabled citizen, by her parents and guardians, Frederick and Eleanor Haggerty, Richard Pond, a developmentally disabled citizen, Debra Roman, a developmentally disabled citizen, by her mother and next friend, Shirley Jenks, Janet Smith, a minor, a developmentally disabled citizen, by her parents and guardians, Harvey and Freda Smith, Thomas Vaillancourt, a minor, a developmentally disabled citizen, by his parent and guardian, Helene Vaillancourt, all of the above individually and on behalf of all others similarly situated, The New Hampshire Association for Retarded Citizens, Plaintiffs,

v.

Meldrim THOMSON, Jr., Governor of the State of New Hampshire, Robert E. Whalen, Commissioner of the Department of Health and Welfare, Robert M. Brunell, Commissioner of the Department of Education, Gary E. Miller, M.D., Director of the Division of Mental Health, Richard G. Lacombe, Director of Public Welfare, Maynard H. Mires, M.D., Director of the Division of Public Health Services, Jack E. Melton, Ph.D., Superintendent and Chief Administrator of the Laconia State School and Training Center, Manfred Drewski, Chief of the Offices of Mental Retardation, Warren Strutts, Assistant Director of the Division of Mental Health, William P. Bittenbender, Edward C. Sweeney, Jr., Catherine R. Caouette, Ivan A. Hackler, George F. Hurt, and Marianne Noyes, Members of the State Board of Education, Bruce Archambeault, Chief of the Division of Vocational Rehabilitation, all of the above in their official capacities only, Defendants.

Civ. No. 78–116.

United States District Court,
D. New Hampshire.
Feb. 8, 1979.

Richard A. Cohen, Concord, N. H., for plaintiffs.

Wilbur A. Glahn, III, Asst. Atty. Gen., Concord, N. H., for defendants.

Leonard Rieser, U. S. Dept. of Justice, Washington, D. C., William H. Shaheen, U. S. Atty., Concord, N. H., for plaintiff-intervenor.

## ORDER

DEVINE, District Judge.

On December 22, 1978, and January 22, 1979, defendants herein moved for protective orders with respect to certain of the plaintiffs' requests for discovery of information contained in files of former or present residents at Laconia State School. Defendants contended that the documents sought could not be produced without violating the common law rules of privacy; that the records requested contained privileged information barred by certain State statutes; and that production of the records would also be in violation of applicable federal regulations. Suggestion is made that consent of the individual involved or of their guardians is required and that the Court should appoint a guardian ad litem to protect the interests of those residents who are not presently under guardianship.

Plaintiffs respond that the desired information is necessary to support their contention that the instant action be certified as a class action; that they will exercise "utmost sensitivity" in the discovery process; and that the Court should not engage in a "time consuming" and "unnecessary" procedure of appointing a guardian ad litem. The plaintiff-intervenor, United States, suggests a middle course that would permit broad discovery but strictly limit those who would have access to the requested information. The United States further suggests the adoption of a procedure to delete identifying aspects of particular files when information contained therein is to be used at trial.

■ The instant action is a civil rights action brought under 42 U.S.C. § 1983, with jurisdiction grounded pursuant to 28 U.S.C. § 1343(3). It is thus not a case in which "State law supplies the rule of decision" (Rule 501, Federal Rules of Evidence). Issues of evidentiary privilege need not, therefore, be determined in accordance with state law, although the Court may choose to do so as a matter of federal common law. *See* Conference Report No. 93–1597, 93rd Cong., 2d Sess., reprinted in U.S.Code Cong. & Admin.News, pp. 7098, 7100–01 (1974).

■ Inasmuch as the law of evidence governing the actual trial as to privileged matters also governs discovery examination under Rule 26(b), Federal Rules of Civil Procedure (*Goldinger v. Boron Oil Company*, 60 F.R.D. 562, 565 [W.D.Pa.1973]; *Transmirra Products Corp. v. Monsanto Chemical Company*, 26 F.R.D. 572, 576 [S.D.N.Y. 1960]), here, as at trial, we need not apply state law as to privilege unless we choose to do so. 4 Moore's Federal Practice ¶ 26.-60[7], at 26–255. *See also Garner v. Wolfinbarger*, 430 F.2d 1093, 1098–1100 (5th Cir. 1970), *cert. denied, sub nom., Garner v. First American Life Insurance Company*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971).

The leading New Hampshire case dealing with the right of privacy is *Hamberger v. Eastman*, 106 N.H. 107, 206 A.2d 239 (1964). In that case, the court outlined the four kinds of invasion comprising the law of privacy as including: "(1) intrusion upon the plaintiff's physical and mental solitude or seclusion; (2) public disclosure of private facts; (3) publicity which places the plaintiff in a false light in the public eye; (4) appropriation, for the defendant's benefit or advantage, of the plaintiff's name or likeness." 106 N.H., at 110, 206 A.2d, at 241.

Discovery requested by plaintiffs in the instant case implicates primarily the second of the above categories—public disclosure of private facts—although arguably the first could also be involved. Defendants cite *Sawyer v. Boufford*, 113 N.H. 627, 312 A.2d 693 (1973), a personal injury case wherein plaintiff sought discovery of defendant's personal assets over and above the limits of the insurance policy. In reversing the trial court's order granting discovery, the court held that the benefit resulting to the plaintiff from such disclosure of assets by facilitating the decision to settle or proceed to trial was outweighed by the unwarranted invasion of the defendant's right to privacy. The court also pointed out that the plaintiff had access to public records and could pursue private investiga-

tive methods for the purpose of procuring such information.

■ In the case at bar, the information sought by the plaintiffs is critical to the issue of whether the constitutional rights of the residents at Laconia State School are being violated. Unlike the situation in *Sawyer, supra,* there are no alternative avenues available to provide access to the requested information. The important policies which underlie the trial discovery, therefore, outweigh such rights of privacy as are implicated, so long as intrusions upon them are strictly limited to the matters deemed necessary to the fair litigation of the instant case. *Mans v. Lebanon School Board,* 112 N.H. 160, 290 A.2d 866 (1972).

■ Nor do the statutory privileges mandated pursuant to N.H. RSA 329:26[1] or by N.H. RSA 330–A:19[2] require abstention from the granting of the requested discovery. These statutes are not absolute in their terms and must yield when disclosure of the information concerned is considered essential. *State v. Kupchun,* 117 N.H. 412, 415, 373 A.2d 1325, 1327 (1977); *State v. Farrow,* 116 N.H. 731, 366 A.2d 1177 (1976). While such information is and should be subject to limitations as to public disclosure, it is available when, as here, valid need is shown for its production.

Weighing the merits of the claimed statutory privileges against the plaintiffs' need for the information in light of their claims of violations of the constitutional and statutory rights of the residents of Laconia State School whose records are involved, we find that the defendants' privilege must yield, at least to the extent of providing persons hereinafter described with access to such records. *Lora v. Board of Education of the City of New York,* 74 F.R.D. 565 (E.D.N.Y. 1977).

■ Defendants also rely on HEW regulations concerning confidentiality of records in institutions that provide intermediate care facility services for the mentally retarded or persons with related conditions. 42 C.F.R. § 449.13(d)(3).[3] This argument overlooks the significance in part (iv) of the language "not otherwise authorized to receive it". Under 28 U.S.C. § 1651, the All Writs Act, a federal district court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." It has long been established that district courts may rely upon this statute to issue such orders (e. g., subpoenas ad testificandum and subpoenas duces tecum) as are appropriate for purposes of pretrial discovery, under Rules 26 and 45 of the Federal Rules of Civil Procedure. *Harris v. Nelson,* 394 U.S. 286, 299 (1969) *rehearing denied,* 394 U.S. 1025, 89 S.Ct. 1623, 23 L.Ed.2d 50 (1969); *Bethlehem Shipbuilding Corp. v. National Labor Relations Board,* 120 F.2d 126 (1st Cir. 1941). In this light, this court has the authority to "otherwise authorize[ ]" release of information under 42 C.F.R. § 449.13(d)(3)(iv).

The state regulations cited by defendants—Policy No.: 22676 (Exhibit A as at-

---

1.  The confidential relations and communications between a physician or surgeon licensed under provisions of this chapter and his patient are placed on the same basis as those provided by law between attorney and client, and, except as otherwise provided by law, no such physician or surgeon shall be required to disclose such privileged communications. . . .

2.  The confidential relations and communications between a psychologist certified under provisions of this chapter and his client are on the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communications to be disclosed.

3.  42 C.F.R. § 449.13(d)(3) provides that

    (i) All information contained in a resident's records, including information contained in an automated data bank, shall be considered confidential.

    (ii) The record is the property of the facility, whose responsibility it is to secure the information against loss, defacement, tampering, or use by *unauthorized* persons.

    (iii) There shall be written policies governing access to, duplication of, and dissemination of information from the record.

    (iv) Written consent of the resident, if competent, or his guardian shall be required for the release of information to persons *not otherwise authorized* to receive it. (Emphasis added.) ·

tached to their 2/22/78 motion for a protective order) as adopted pursuant to the authority in RSA 171–A:14(V)—establish a procedure to preserve the confidential and privileged character of the records of Laconia State School residents. As we have noted earlier, state law as to privilege does not supply the rule of decision in this non-diversity case. Moreover, even if we chose to apply state policy, its provisions would allow removal of records from that facility's jurisdiction pursuant to an order from this court. Policy No.: 22676, Procedure # 3.[4] Given that an entire record may be removed from the facility under this procedure, # 3, Procedure # 5, which would normally govern release of information (only with written consent) from that record while it is in the possession of the School, becomes irrelevant.

In summary, after balancing the benefits of broad discovery in this case against the potential harm to the privacy or privileged interests asserted by the defendants, the Court finds that defendants' interests are outweighed by the necessity of examining information from individual records as quickly and efficiently as possible in order to determine the existence of constitutional violations.[5]

The defendants' motions for protective order are denied, with the exception that (as set forth in a separate Order issued this date) access is to be limited to the named party plaintiffs and the attorneys for all parties herein.

SO ORDERED.

---

4. See also, in light of the above discussion of federal regulations, Procedure # 7, which provides that "[o]nly *authorized* persons shall have access to a resident's records." (Emphasis added.)

5. Cf., Lora v. Board of Education of the City of New York, 74 F.R.D. 565 (E.D.N.Y.1977) (granting a motion to compel production, subject to protective orders, of randomly selected records of maladjusted and disturbed children whose rights were allegedly being denied in their special schools) and *Carr v. Monroe Manufacturing Company*, 431 F.2d 384 (5th Cir. 1970) (affirming a district court's granting of a motion for production, subject to protective orders, of state employment commission's records in a case of alleged racial discrimination in the employment field), *cert. denied sub nom., Aldridge v. Carr*, 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971).