Thomas BURKA, et al., Plaintiffs,

v.

NEW YORK CITY TRANSIT AUTHORITY, et al., Defendants.

No. 85 Civ. 5751 (GLG).

United States District Court, S.D. New York.

June 30, 1986.

Ellen M. Weber, Margaret K. Brooks and
Catherine H. O'Neill, Legal Action Center

of the City of New York, New York City, for plaintiffs.

Robin M. Weiner, Gloria Colon, Albert C. Cosenza, General Counsel's Office, New York City Transit Authority, Brooklyn, N.Y., for defendants.

JAMES C. FRANCIS, IV, United States Magistrate.

The plaintiffs in this action challenge the policy pursuant to which the New York City Transit Authority (the "TA") tests its employees and applicants for employment to determine if they have recently used marijuana. During the course of discovery, a dispute has arisen concerning the plaintiffs' access to information contained in the files of TA employees and applicants. Determination of this controversy requires a balancing between developing a full record as the basis for fair adjudication and maintaining the confidentiality of employment records. For the reasons that follow, the balance in this case tips in favor of disclosure.

*Background*

A. *The Challenged Policy*

The New York City Transit Authority is a public corporation that operates mass transportation in New York City. The individual defendants, each sued in his or her official capacity, are David L. Gunn, the TA's president, Robert R. Kiley, its chairman, Brian Frohlinger, vice president for labor relations, and Monica Benjamin, medical director.

The TA's drug screening policy prohibits employees from using marijuana at any time. TA employees must submit to drug testing at periodic physical examinations, at examinations prior to promotion, or following any extended absence. In addition, a supervisor or manager can order testing after any on-the-job incident or when he believes that the employee is impaired as the result of drug use. Finally, once an employee has tested positive, he may be retested at any time. Any employee who refuses to be tested is immediately dismissed. An employee who tests positive for marijuana may be dismissed, suspended, or referred for mandatory drug counseling, depending on his tenure and work record. All applicants for employment are also subject to drug screening, and any applicant who refuses to be tested or who tests positive for marijuana is denied employment. The TA screens for drug use primarily by means of urinalysis. In addition, employees involved in a subway, bus or other vehicular accident may also be required to submit to a blood test.

The plaintiffs challenge this policy on a variety of legal grounds. First, they contend that the administration of the drug tests constitutes an unreasonable search and seizure, in violation of the fourth amendment to the United States Constitution and article I, section 12 of the New York State Constitution. Next, the plaintiffs argue that the TA's policy violates their due process and equal protection rights under both the federal and state constitutions. Finally, plaintiffs claim they have been discriminated against on the basis of a perceived drug-related disability, when they are in fact qualified to perform the requirements of their jobs. According to the plaintiffs, this discrimination violates section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, regulations promulgated thereunder, and the New York State Human Rights Law, N.Y.Exec.L. § 296 (McKinney 1982).

B. *Class Certification*

The plaintiffs filed this case as a class action on behalf of a class consisting generally of all past, present and future TA employees and applicants who have been or will be subject to drug testing and who have been or will be disciplined because of positive test results for marijuana. First Amended Complaint at 12. The plaintiffs proposed to separate this class into five subclasses according to the reason that each class member was tested. *Ibid.* On September 24, 1985, the plaintiffs moved for class certification.

In an opinion dated June 16, 1986, 110 F.R.D. 595, the Honorable Gerard L. Goettel,

U.S.D.J., denied the plaintiffs' motion without prejudice. The Court noted that each of the proposed subclasses included both persons who denied the use of marijuana ("nonusers") and those who admitted using it off-the-job but contend that their ability to perform their job functions was unimpaired ("users"). At 602. Judge Goettel held that because the legal claims of users differ substantially from those of nonusers, no single subclass representative could adequately represent both groups. *Id.* at 602–603. On the other hand, he found that each of the plaintiffs presented claims typical of other members of a redefined subclass and that each could adequately protect the interests of the class. *Id.* at 604–606. The Court also held that the plaintiffs presented common questions of law and fact and that the action was appropriate for injunctive or declaratory relief, thus satisfying the requirements of Rules 23(a)(2) and 23(b)(2), Fed.R. Civ.P.

On the basis of these findings, Judge Goettel denied class certification at this time. *Id.* at 608. However, he stated that the plaintiffs may renew their motion later, if they redefine the subclasses to separate users from non-users, demonstrate the numerosity of each subclass, and designate any additional subclass representatives. *Ibid.* The Court directed that renewal of the motion for class certification await determination of any motion to dismiss to be made by the defendants. *Ibid.*

## C. *The Discovery Dispute*

The current dispute arose initially from an interrogatory in which plaintiffs requested the identities of employees who tested positive for marijuana, the reason each person was subjected to a urine test, and the type of procedure used to determine the person's ability to perform job functions at the time of the urinalysis. In response, the TA provided the name and job title of each employee who had positive test results, the date of screening, the TA unit where the urine sample was submitted, and the identity of any other drugs detected. The TA stated that the remaining information sought by the plaintiffs was not available from the files of the medical department. That information is, however, in the possession of other departments of the TA, Letter of Robin W. Weiner and Gloria E. Colon at 7–8 (March 4, 1986), and may be generally available in each employee's personnel files.

When the TA objected to answering the outstanding interrogatories because of the burden involved, plaintiffs' counsel offered to search the TA files themselves. Thus, although plaintiffs did not serve a formal request pursuant to Rule 34, Fed.R.Civ.P., for production of the personnel files, they have sought access to those files in response to the TA's refusal to answer the related interrogatory. Furthermore, plaintiffs now note that they are required to separately identify user and non-user members of the proposed subclasses in order to demonstrate numerosity. Letter of Ellen M. Weber at 2–3 (June 23, 1986). This will require a subjective determination for which plaintiffs' counsel would need access to the files. Therefore, it is appropriate to assume that plaintiffs seek access to the files generally and to judge the defendants' objections accordingly.

The TA resists disclosure of the files on a variety of grounds. Chief among these is the contention that the files contain confidential information about each employee or applicant that should not be publicly disseminated. Such information includes medical records, performance evaluations, and records of disciplinary actions. Where an employee has been involved in an incident, the TA argues that records of any non-final action would also be subject to the deliberative process privilege. Finally, because of the volume of files involved and the fact that they are not centrally maintained, the TA argues that compliance with the plaintiffs' request would be unduly burdensome.

*Discussion*

## A. *The Privacy Privilege*

■ Because the plaintiffs have asserted federal statutory and constitutional claims, the TA's claims of privilege are governed

by federal common law. *In re Pebsworth,* 705 F.2d 261, 262 (7th Cir.1983); *American Civil Liberties Union v. Finch,* 638 F.2d 1336, 1342–43 (5th Cir.1981); Fed.R.Evid. 501. However, the policies underlying state evidentiary privileges must still be given serious consideration, even if they are not determinative. *Memorial Hospital v. Shadur,* 664 F.2d 1058, 1061 (7th Cir. 1981); *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122, 127 (N.D.N.Y.1984). "A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976).

■ These principles dictate that the claim of privilege here be subject to a balancing test. In *Lora v. Board of Education,* 74 F.R.D. 565 (E.D.N.Y.1977), the defendants raised objections to discovery on the basis of the confidentiality of the diagnostic records of handicapped students. In establishing the framework for analysis, the court stated:

> Whether claims to privacy and privilege of the sort made here are ultimately rooted in the Constitution, or in non-constitutional considerations of public policy, they are in no event absolute. Like rights and interests generally, they are qualified and must be balanced against legitimate and weighty competing private and state interests.

*Id.* at 576. Courts have repeatedly utilized such a weighing process in evaluating claims of privilege similar to that asserted here by the TA. *See, e.g., Gray v. Board of Higher Education,* 692 F.2d 901, 904–05 (2d Cir.1982) (confidentiality of basis for tenure denial); *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. at 127 (employee personnel files). Accordingly, the TA's claim that its employee's personnel files should not be disclosed must be evaluated by balancing a variety of relevant factors.

### 1. *Nature of the Privacy Interest*

The privacy right asserted by the TA on behalf of its employees could be based on either of two interests: the individual interest in avoiding disclosure of personal matters and the interest in independence in making certain kinds of important decisions. *See Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977); *Lora v. Board of Education,* 74 F.R.D. at 570. The latter interest involves the concern that disclosure would have a chilling effect on future decisions. Thus, for example, divulging communications between a patient and a psychotherapist would inhibit the free flow of information necessary for diagnosis and treatment. *See Lora v. Board of Education,* 74 F.R.D. at 575–76. Likewise, disclosure of deliberations concerning an employment decision could impede frank evaluations by the employer. *See Memorial Hospital v. Shadur,* 664 F.2d at 1062.

No such interest is in jeopardy here. A TA employee is given no option of declining drug screening: if he refuses, he is terminated. Hence, the disclosure of material related to the drug tests cannot chill a nonexistent choice. Similarly, it is presumably the obligation of all TA personnel to cooperate in incident investigations, so that neither the employee's statement nor his supervisor's report would be affected by knowledge that it might be disclosed. Indeed, even when some chilling effect is anticipated, courts have frequently held this danger to be outweighed by the need for disclosure. *See Gray v. Board of Higher Education,* 692 F.2d at 909 (tenure committee proceedings); *Schachar v. American Academy of Opthalmology, Inc.,* 106 F.R.D. 187, 190 (N.D.Ill.1985) (patient medical records); *Garrity v. Thomson,* 81 F.R.D. 633, 637 (D.N.H.1979) (records of handicapped children).

■ The second aspect of the right to privacy—the interest in avoiding disclosure of personal matters—is implicated here. A TA employee may well desire that information about his having used narcotics, since it relates to a possible criminal offense, not be disseminated. This interest in confidentiality, although reduced, is not wholly

eliminated by maintaining anonymity with respect to information divulged. *Lora v. Board of Education,* 74 F.R.D. at 582. Accordingly, the privacy interest here is one of limiting release of personal information, and it must be considered along with the other relevant factors.

### 2. *Expectation of Privacy*

An issue closely related to the nature of the privacy interest is the reasonableness of the expectation that the interest will be protected. If, for example, disclosure of the purportedly confidential information frequently occurs, there is less reason to prohibit some further dissemination. *See Whalen v. Roe,* 429 U.S. at 602, 97 S.Ct. at 877; *Lora v. Board of Education,* 74 F.R.D. at 583. If, on the other hand, the information has been scrupulously held confidential, any dissemination will be contrary to the expectations of the person asserting the privacy interest.

Here, the TA's claim of confidentiality is based in large part on § 96 of N.Y. Public Officers Law, which limits disclosure of personal information by a public agency. Although this law does not itself create a privilege against disclosure that must be enforced in connection with claims under federal law, it does provide some basis for arguing that TA employees expect their personnel files to be kept confidential. However, this expectation is undercut by the numerous circumstances listed in the statute where disclosure is permitted. Personal information may be disclosed by an agency to any other employee or officer of the agency in furtherance of his duties, § 96(1)(b), to any other governmental unit, § 96(1)(d), to anyone pursuant to compulsory legal process, § 96(1)(k), and, indeed, for any "routine use," § 96(1)(e).

Furthermore, the statute is of limited value in ascertaining the privacy expectations of TA employees, since few bus drivers or token clerks are likely to have a lawyer's knowledge of state statutes. *See Lora v. Board of Education,* 74 F.R.D. at 583 (parents of handicapped children unlikely to rely on psychotherapist-patient privilege). More important is the employees' perception of everyday practices at the TA. In this regard, the plaintiffs have presented compelling evidence that employee records are widely disseminated within the TA, thus seriously diminishing any expectation of privacy. For example, Shirley Ugelow, the TA's former Assistant Director of Personnel, testified at deposition that information about an employee's drug use is routinely conveyed from the medical department to the personnel and labor relations departments. (Tr. 147–53). Furthermore, although employee personnel files may be obtained only by following a sign-out procedure, "practically everybody" within the TA can gain access to them. (Tr. 176–78).

The routine manner in which the confidentiality of employee information is breached is evinced by the TA's conduct in this litigation. It has already disclosed, without objection, the names of employees who have tested positive for marijuana, as well as the dates of those tests, and the identity of any other drugs for which the employee tested positive. Letter of Ellen M. Weber, attachment A (February 21, 1986). When the TA's legal counsel so readily provides sensitive personal information with identifying data in the course of litigation, TA employees can hardly have a reasonable expectation that their personnel files will be kept entirely confidential.

A further consideration in weighing the expectation of privacy is the relation to the litigation of the party with the interest in confidentiality. A litigant himself must reasonably anticipate that his personal matters will be disclosed, while a non-party having no stake in the litigation retains a greater expectation of privacy. *See Inmates of Unit 14 v. Rebideau,* 102 F.R.D. at 126 (personnel files of defendant prison guards disclosed). The instant case falls between these two extremes. Until a class is certified, employees of the TA other than the named plaintiffs are not parties to this action. On the other hand, the plaintiffs are asserting claims that affect the rights of other employees. This case, then, is

more akin to *General Motors Corp. v. Director of National Institute for Occupational Safety and Health*, 636 F.2d 163 (6th Cir.1980), *cert. denied*, 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981), where a government agency sought employee medical records to determine if they were being subjected to a health hazard. In that case, as here, the expectation of privacy did not preclude limited disclosure of information to a party acting for the benefit of the employees.

### 3. *Interest in Disclosure*

■ Against the privacy interest asserted by the TA, the Court must weigh the interests that would be served by disclosure. First among these is the "strong policy in favor of full development of the facts in federal litigations to the end that justice be served." *Lora v. Board of Education*, 74 F.R.D. at 579. As the Supreme Court held in *United States v. Nixon*, 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974):

> The need to develop all relevant facts in the adversary system is both fundamental and comprehensive.... The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence.

Here the information sought by the plaintiffs—for example, the circumstances under which employees are subjected to drug screening—are central to this action. Accordingly, the interest in developing a complete record applies with full force.

■ The interest in full disclosure also turns, however, on the nature of the substantive claims asserted. Thus, for example, the interest in applying broad federal discovery rules is weak when the substantive rule of decision is only nominally federal and incorporates state law by reference. *American Civil Liberties Union v. Finch*, 638 F.2d at 1343. In such circumstances, the policy underlying a state law evidentiary privilege may well prevail. On the other hand, full disclosure is most strongly warranted where a case is based on alleged violations of federally-protected civil rights. *Inmates of Unit 14 v. Rebideau*, 102 F.R.D. at 128; *Lora v. Board of Education*, 74 F.R.D. at 584. Because the civil rights laws are in part designed to protect individuals against illegal state action, it would be anomalous to permit state law privileges to interfere with their enforcement. *See American Civil Liberties Union v. Finch*, 638 F.2d at 1341–42.

Here, federal civil rights claims are the focal point of the litigation. Pursuant to 42 U.S.C. § 1983, plaintiffs challenge the alleged violation of their federal constitutional rights by a public agency. In addition, they rely on federal law barring discrimination against handicapped persons. These claims are accompanied, then, by a strong interest in disclosure of all relevant material.

■ A final consideration regarding the interest in disclosure is plaintiffs' need for the material sought. Even in an individual discrimination action, classwide discovery may be necessary to demonstrate the existence of illegal policies and practices. *See Lora v. Board of Education*, 74 F.R.D. at 584. Such is the case here. The validity of drug screening programs turns in part on the arbitrariness with which tests are required; if the employer is provided excessive discretion, the policy may be constitutionally infirm. *See Shoemaker v. Handel*, 619 F.Supp. 1089, 1103 (D.N.J.1985). Thus, it is critical even for individual plaintiffs challenging the TA's policy to ascertain how that policy is in fact implemented on a case-by-case basis.

Moreover, the plaintiffs here are entitled to renew their motion for class certification. In that context, they must demonstrate that each subclass of drug user and non-user employees is sufficiently numerous to meet the requirements of Rule 23. There is no means for plaintiffs to accomplish this without access to the TA's personnel files.

The plaintiffs have thus demonstrated that the material they seek is critical to their case. By contrast, the TA has sug-

gested no alternative means for providing the information necessary to plaintiffs. *See Garrity v. Thomson,* 81 F.R.D. at 636. Accordingly, there is a substantial need to disclose the personnel files sought in this case.

### 4. *Limitations on Disclosure*

■ The final consideration in evaluating a claim of privacy is whether limitations can be placed on the extent of disclosure. Where personnel information can be disclosed without identifying the individual involved, the claim of privacy is substantially diminished. *Lora v. Board of Education,* 74 F.R.D. at 580–81. Indeed, the plaintiffs here have offered to accept copies of files from which identifying information is redacted. Letter of Ellen M. Weber at 6 (February 21, 1986). Yet the ability to preserve anonymity in this case has been lost. The TA has already disclosed to the plaintiffs the names of persons who have tested positive for marijuana, together with additional identifying information such as the date of the tests. It would therefore serve little purpose to require the redaction of names from the additional documents now requested. Moreover, if the plaintiffs' motion for class certification is granted, identifying information may be necessary for purposes of contacting class members.

Nevertheless, other effective limitations can be placed on disclosure. Only plaintiffs' counsel and persons in their direct employ need have access to the personnel files. In addition,

> The court may order that the information they contain be used solely for the purpose of the pending litigation; strict confidentiality may be enforced under penalty of contempt; the number of copies to be made of the documents may be rigidly regulated; files submitted to the court may be ordered sealed; and all material may be required to be returned to the defendants immediately upon conclusion of this suit.

*Lora v. Board of Education,* 74 F.R.D. at 582–83.

■ In light of the limited privacy interest asserted here and the extent to which any expectation of confidentiality has been undermined, such a protective order can adequately protect the rights of TA employees. On that basis, and because there is both a specific need for disclosure in this case and a public interest in full discovery, the defendants' claim of privilege must yield.

### B. *Deliberative Process Privilege*

■ The TA also objects to disclosure of certain materials on grounds of the deliberative process privilege. It contends that a supervisor's evaluation of an employee's appearance or behavior in connection with an incident or accident is "predecisional material" exempt from discovery. Letter of Robin W. Weiner and Gloria E. Colon at 5 (March 4, 1986). However, the deliberative process privilege applies only to expressions of opinion or recommendations, not to the facts upon which such evaluations might have been based. *See Ernest and Mary Hayward Weir Foundation v. United States,* 508 F.2d 894, 895 n. 2 (2d Cir.1974); *Wright v. Patrolmen's Benevolent Association,* 72 F.R.D. 161, 164 (S.D.N.Y.1976). Here, the recorded observations of an eyewitness, even a supervisor who may make a recommendation or decision, would therefore not fall within the privilege.

■ Moreover, even if the requested information might constitute deliberations, it may nevertheless be subject to disclosure. Where the decision-making process itself is the subject of the litigation, the deliverative privilege may not be raised as a bar against disclosure of critical information. *See, e.g., Gray v. Board of Higher Education,* 692 F.2d at 906; *Memorial Hospital v. Shadur,* 664 F.2d at 1062–63. Here, the process for requiring a TA employee to submit to a drug test is at issue, and information relating to that process must be disclosed.

The TA's blanket assertion of the deliberative process privilege is therefore without merit. The TA may, of course, reassert

the privilege with respect to specific documents to the extent that it can do so in conformity with the principles stated here.

### C. The Burden of Disclosure

In the alternative, the TA contends that the requested discovery is unduly burdensome. This argument is based in part on a misunderstanding of the scope of the plaintiff's request. The TA appears to believe that the plaintiffs are seeking access to the file of every TA employee or applicant ever tested for drugs. Letter of Robin W. Weiner and Gloria E. Colon at 2–3 (March 4, 1986); Letter of Robin W. Weiner and Gloria E. Colon at 5 (June 12, 1986). Although the plaintiffs' initial requests may have reasonably been interpreted in this way, they have since revised their demand. Plaintiffs now seek access only to the files of those employees or applicants who have tested positive for marijuana. Letter of Ellen M. Weber at 3, n. 1 (June 23, 1986). Thus, the number of individuals involved appears to be less than 2,000. *Ibid.*

■ The files of these employees and applicants may be located in more than one department of the TA. Nevertheless, they can be obtained expeditiously, since a list of persons who have tested positive for marijuana has already been prepared. In addition, the primary burden of discovery here is on plaintiffs' counsel who have agreed to review the files themselves. Thus, the TA has not met its burden of demonstrating that disclosure of the requested files will cause undue strain. Rather, the TA has "made no factual showing that discovery here is any more burdensome than is typical in responding to discovery requests in complex cases." *Schachar v. American Academy of Opthalmology, Inc.*, 106 F.R.D. at 190.

### D. Stay of Discovery

■ The TA's final request is that this discovery be stayed pending determination of a motion to dismiss the complaint. A stay is inappropriate for three reasons. First, the TA has not yet made any such motion, and it would be inappropriate to delay discovery for an indefinite period based on no more than the expectation that some sort of motion may be forthcoming. Second, as stated above, access to the files of TA employees would be appropriate for plaintiffs to pursue even their individual claims. Thus, unless the action were dismissed, this discovery would be taken regardless of the ultimate determination as to class certification. Finally, access to files is important for developing evidence relevant to the class motion. Accordingly, it is more expeditious for plaintiffs to be prepared to renew their class motion immediately, if and when any motion to dismiss is denied. Discovery will therefore not be stayed.

### Conclusion

For the reasons stated above, the TA shall provide plaintiffs' counsel with access to the medical, personnel, or other files of TA employees or applicants who have tested positive for marijuana, subject to the following conditions:

1. Only plaintiffs' counsel and persons in their direct employ shall have access to these files. Plaintiffs' counsel shall provide counsel for the TA with the names of all persons having such access and shall ensure that such persons are familiar with the terms of this order.

2. The information contained in the files shall be used solely for the purposes of this litigation.

3. Information from the files submitted to the court with identifying information shall be sealed.

4. Copies of any material contained in the files that includes identifying information shall be returned to the TA immediately upon the conclusion of this litigation.

5. Violation of any of the terms of this order may result in the violator being held in contempt.

The TA's request for a stay of discovery is denied.

SO ORDERED.