**Arthur GROSSMAN, Plaintiff,**

**v.**

**Frederick A.O. SCHWARZ Jr., Laurence Levy, Doron Gopstein, Edward I. Lieberman, Lorna B. Goodman, Thomas Bergdall, Saul Bernstein, Eugene Borenstein, Dennis DeLeon, Leonard Olarsch, Mary Barry, Steven Ertrachter, Derek Ishmael and the City of New York, Defendants.**

**No. 84 Civ. 3323 (KMW).**

United States District Court, S.D. New York.

May 3, 1989.

Arthur Grossman, Rego Park, N.Y., pro se.

Thomas Roberts, Asst. Corp. Counsel, Dept. of Law, New York City, for defendants.

## ORDER

KIMBA M. WOOD, District Judge.

The objections of plaintiff and the objections of defendants to Magistrate Lee's March 29, 1989 Opinion and Order are hereby denied.

## MEMORANDUM OPINION AND ORDER

BARBARA A. LEE, United States Magistrate.

This is a civil rights action against the City of New York and several individual City employees. The *pro se* plaintiff is an attorney and former City employee who alleges that defendants deprived him of his First Amendment rights and constructively discharged him from his position as an Associate Attorney in the City's Department of Law, all in retaliation for prior litigation against the City. The case was referred to me for general pretrial supervision by the Hon. Kimba M. Wood, U.S.D.J., by Order of Reference entered September 21, 1988. Presently pending before me are defendants' objections on grounds of privilege to certain of plaintiff's document requests. For the reasons hereinafter stated, defendants' objections are sustained in part and overruled in part.

## BACKGROUND

In 1970, while employed as an Associate Attorney with the Law Department of the City of New York, plaintiff commenced a class action in New York State Supreme Court challenging the procedures for hiring attorneys in the Law Department, which eventually reached the Court of Appeals, *Grossman v. Rankin*, 43 N.Y.2d 493, 373 N.E.2d 267, 402 N.Y.S.2d 373 (1977). A civil rights action in this court arising out of the same fact pattern was dismissed by Judge Weinfeld for legal insufficiency, *Grossman v. Schwartz*, 514 F.Supp. 421 (S.D.N.Y.), *aff'd without opinion*, 679 F.2d 872 (2d Cir.1981). During lengthy proceedings including two trials (Am.Cplt. ¶¶ 8–9), the time spent by plaintiff in court on the State-court action was not charged to plaintiff's leave, pursuant to a ruling by the then Corporation Counsel, J. Lee Rankin (*Id.* ¶ 7). Mr. Rankin's policy was revoked by a subsequent Corporation Counsel, Allen G. Schwartz, whose decision was successfully challenged by plaintiff in an Article 78 proceeding (*Id.* ¶¶ 9–10). Because damages are not available in an Article 78 proceeding, plaintiff commenced a second civil rights action in this court arising out of the same administrative conduct, *Grossman v. Schwartz*, 79 Civ 1789, which was dismissed without prejudice by Judge Sweet in 1982.

This action, commenced in 1984, arises out of events from 1982 to 1984 which,

plaintiff alleges, constituted harassment in retaliation for his prosecution of the second civil rights action (then still pending) and a conspiracy to violate his First Amendment rights (Am.Cplt. ¶ 11). Defendants are Frederick A.O. Schwarz, Jr., the Corporation Counsel at the time the action was filed; the seven members of the Service and Review Board of the New York City Law Department; four attorneys who held various supervisory positions in the Law Department at relevant times; and the City of New York. The central allegations of the Amended Complaint are that all defendants, acting under color of law, conspired to violate plaintiff's Constitutional rights in retaliation for his refusal to discontinue his federal civil rights action against Schwarz; and that defendants' actions eventually resulted in plaintiff's constructive discharge (Am.Cplt. ¶¶ 42–54). The specific allegations of fact with respect to the respective defendants are that Schwarz used coercion and duress to force plaintiff to withdraw the lawsuit (¶¶ 35–36; *see generally* ¶¶ 16, 30–54); that Goodman and Bergdall gave plaintiff "false" and "fraudulent" negative performance evaluations (¶ 64; *see generally* ¶¶ 20–21, 55–66); that the members of the Review Board violated their own rules (¶ 71); took too long to decide plaintiff's appeal of the negative evaluation (¶¶ 73, 78) and decided it after his "constructive[ ] discharge" (¶ 78; *see generally* ¶¶ 19, 23–28, 67–81); that Lieberman and Gopstein, who were respectively chairman of the Review Board (¶ 19) and Chief Assistant Corporation Counsel (¶ 18) denied plaintiff access to his personnel file (¶¶ 74–77) and that Gopstein was "dilatory" and "uncooperative" in various ways (¶¶ 82–91); that Levy, the Inspector General of the Law Department (¶ 17), predicted retaliation against plaintiff by Schwarz (¶¶ 92–95); and that Olarsch, the Chief of the Torts Division (¶ 22), discriminatorily assigned plaintiff additional work; refused to pay plaintiff overtime for trial work and transferred plaintiff from Manhattan to Queens (¶¶ 98–103). The City's liability appears to be predicated on a theory of respondeat superior (¶ 107). The relief sought includes compensatory and punitive damages; a declaratory judgment that defendants' acts are in violation of plaintiff's First Amendment rights; and attorneys' fees and costs.

Defendants' motion to dismiss the Amended Complaint was denied by Judge Sprizzo.[1] *Grossman v. Schwarz,* 678 F.Supp. 440 (S.D.N.Y.1988). The court held that plaintiff had stated a legally sufficient claim based on the First Amendment in accordance with the teaching of *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983), in that the speech at issue involved a matter of public concern, namely how lawyers representing New York City are selected and whether State constitutional provisions are being followed. 678 F.Supp. at 442.

Defendants answered the Amended Complaint on June 1, 1988, and discovery commenced. By order entered October 4, 1988, Judge Wood (to whom the case had been reassigned in the meantime) ruled on a number of outstanding discovery disputes which had been submitted informally pursuant to local Civil Rule 3(*l*) and referred the remaining disputes, including this one, to me pursuant to the September 21 Order of Reference. A pre-trial conference pursuant to Rule 16, Fed.R.Civ.P., was held before me on October 7, 1988, at which, among other things, defendants were directed to serve supplemental responses to plaintiff's document request, furnishing the information called for by local Civil Rule 46(e)(2) with respect to all claims of privilege; and dates were set for briefing the legal issues raised by defendants' claims of "governmental" privilege.

Defendants served an "Amended Response to Order [*sic*] to Produce Documents" dated October 17, 1988, and simultaneously produced some of the documents previously objected to. Accordingly, only the objections asserted in the Amended Response are here considered. In two "general objections," defendants identify the

---

1. The original complaint had been dismissed by Judge Motley by order filed January 6, 1986, for failure to allege that the harassment of which plaintiff complained was in retaliation for the earlier litigation. *Grossman v. Schwarz,* 1986 Westlaw 739 (S.D.N.Y.1986).

privileges relied on as "predecisional" (a category which is further subdivided into "executive privilege" and "deliberative process"); attorney-client; and attorney work product (Am.Response p. 2, ¶¶ 1, 2). The parties' arguments, including their contentions relating to predicate facts, were made in letters [2] supplemented as to the "predecisional" privilege by the memoranda of law filed following the October 7 conference. No affidavits were filed by any party.

## DISCUSSION

 It is axiomatic that the burden is on a party claiming the protection of a privilege to establish the facts essential to its applicability. *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *In re Grand Jury Subpoena Dated January 4, 1984*, 750 F.2d 223, 224 (2d Cir.1984); *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y.1988); *Burke v. New York City Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y.1987). Questions of privilege in federal civil rights cases are governed by federal law. *King*, 121 F.R.D. at 187 (and authorities cited). A privilege whose source is State law, whether statutory or decisional, will be recognized in a "spirit of comity" only to the extent consistent with the overriding federal policy of the civil rights laws. *Id.* at 187–88, 194. To justify withholding of evidence in a civil rights action, a claim of privilege "must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action." *Skibo v. City of New York*, 109 F.R.D. 58, 61 (E.D.N.Y.1985) (quoting *Wood v. Breier*, 54 F.R.D. 7, 13 (E.D.Wis. 1972)).

## I. "PREDECISIONAL" PRIVILEGE.

Seven defendants—the corporation Counsel and six members of the Review Board—have identified documents in their posses-

sion which they characterize as "predecisional." Schwarz relies "solely upon the executive privilege protecting predecisional documents." Am. Response, p. 2, ¶ 2. The Review Board members, who also invoke "executive privilege," object to production on the additional ground that the documents "reveal the deliberative process of the Agency Service and Review Board's review of plaintiff's appeal from his evaluation." *Id.* The source and scope of each of these theories of governmental privilege must be examined, in order to avoid the uncritical importation of doctrines developed in different contexts to protect government interests not necessarily involved in civil rights cases. *See generally Kelly v. San Jose*, 114 F.R.D. 653, 656–59 (N.D.Cal.1987), *cited with approval in King*, 121 F.R.D. at 188.

### A. Source of Law.

 Defendants cite as the source of the "predecisional" privilege the provision of the New York Freedom of Information Law (FOIL) which exempts from the requirement of public access to agency records "inter-agency or intra-agency materials which are not ... final agency policy or determinations." N.Y.Pub.Off.L. § 87(2)(g)(iii). Like its federal counterpart, 5 U.S.C. § 552, New York's FOIL creates no statutory "privilege" from discovery in a civil action. *In re Schwartz*, 130 Misc.2d 786, 497 N.Y.S.2d 834 (Surr.Ct. Nassau Co. 1986); *see Chrysler Corp. v. Brown*, 441 U.S. 281, 290–94, 99 S.Ct. 1705, 1711–14, 60 L.Ed.2d 208 (1979); *Pleasant Hill Bank v. United States*, 58 F.R.D. 97, 101 (W.D.Mo. 1973); 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 509[06] at 509–43—44 (1988). On the contrary, the purpose of the statute is "to maximize accessibility of government documents to the public," *Schwartz*, 497 N.Y.S.2d at 836, and exemptions are therefore to be narrowly construed. *See Hawkins v. Kurlander*, 98

---

**2.** Letters from defendants' attorney, Thomas B. Roberts, Esq., to me dated October 4, October 17 (enclosing Amended Response) and October 25, 1988; handwritten notes from plaintiff to me dated October 4 (with enclosures), October 18 (enclosing copies of certain documents produc-ed with Amended Response) and November 2, 1988 (with enclosures); letter from Mr. Roberts to Judge Wood dated September 14, 1988 (with enclosures); and letter from plaintiff to Judge Sprizzo dated August 16, 1988.

A.D.2d 14, 15, 469 N.Y.S.2d 820, 821 (4th Dep't 1983) (construing § 87(2)(e)). Authorization for barring discovery of defendants' "predecisional" documents must therefore be found elsewhere.

Defendants have cited no New York case recognizing a common law "predecisional" privilege, and the court's own research has discovered none under that name. New York does recognize a limited "executive privilege," which is "confined to 'confidential communications *between public officers, and to public officers*, in the performance of their duties, where the public interest requires that such confidential communications or the sources should not be divulged.'" *Kwitny v. McGuire*, 102 Misc.2d 124, 125, 422 N.Y.S.2d 867, 868 (S.Ct.N.Y.Co.1979), *aff'd*, 77 A.D.2d 839, 432 N.Y.S.2d 149 (1st Dep't 1980), *aff'd on the opinion of Special Term*, 53 N.Y.2d 968, 441 N.Y.S.2d 659, 424 N.E.2d 546 (1981) (quoting *People v. Keating*, 286 A.D. 150, 153, 141 N.Y.S.2d 562, 565 (1st Dep't 1955)) (emphasis Special Term's). The source of the "executive privilege" claimed by all defendants is, then, the common law of the State of New York. The limitations of that privilege as understood in New York, as well as the policy considerations underlying it, are discussed below in relation to the specific documents as to which executive privilege is claimed.

■ The alternative theory of privilege asserted as to documents which "reveal the deliberative process" of the Review Board (Am. Response p. 2, ¶ 2), appears to be a reference to the so-called "deliberative" privilege, which has long been recognized in federal common law. *See Ernest and Mary Hayward Weir Foundation v. United States*, 508 F.2d 894, 895 n. 2 (2d Cir.1974) (per curiam) ("pure deliberative processes of government" have traditionally been protected from discovery in civil actions). This theory of privilege is properly applicable only to communications relating to policy formulation at the higher levels of government; it does not operate indiscriminately to shield all decision-making by public officials. *Kelly*, 114 F.R.D. at 658–59. In a civil

rights action where the deliberative process of State or local officials is itself genuinely in dispute, privileges designed to shield that process from public scrutiny must yield to the overriding public policies expressed in the civil rights laws. *Burka v. New York City Transit Authority*, 110 F.R.D. 660, 667 (S.D.N.Y.1986); *cf. Memorial Hospital v. Shadur*, 664 F.2d 1058 (7th Cir.1981) (per curiam) (confidential medical disciplinary proceedings, privileged under State law, required to be disclosed in federal antitrust action alleging conspiracy); *United States v. AT & T*, 524 F.Supp. 1381, 1389–90 (D.D.C.1981) (FCC staff members could be questioned about "thought processes" in administrative process, notwithstanding claim of "deliberative process privilege," where manipulation of agency decisions by staff was in issue in antitrust action); *see also Kelly*, 114 F.R. D. at 659 (dictum).

### B. Procedure for Invoking Governmental Privilege.

■ Governmental privilege must ordinarily be invoked by a department head or other responsible agency official, after a personal review of the documents, in an affidavit stating a factual basis for the claim of injury to legitimate government interests flowing from disclosure. *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); *United States v. O'Neill*, 619 F.2d 222, 225–26 (3d Cir.1980); *King*, 121 F.R.D. at 189; *Kelly*, 114 F.R.D. at 669–70; *see also Clift v. United States*, 597 F.2d 826, 828–29 (2d Cir.1979). Assertion of privilege by the attorney for the City or by the author of the document is insufficient. *King*, 121 F.R.D. at 189; *Kelly*, 114 F.R.D. at 669. The factual basis must be stated "with particularity, so that the court can make an intelligent and informed choice as to each requested piece of information." *King*, 121 F.R.D. at 189. Specifically, the affidavit must include a showing of *"what interests* would be harmed, *how* disclosure under a protective order would cause the harm, and *how much* harm there would be." *Kelly*, 114 F.R.D. at 669 (emphasis in original), *quoted with approval in King*, 121 F.R.D. at 189;

*see also United States v. O'Neill,* 619 F.2d at 226–27.

If the defendants fail to make the requisite threshold showing of specific injury to governmental interests, the court has "no choice but to order disclosure." *Kelly,* 114 F.R.D. at 669, *quoted with approval in King,* 121 F.R.D. at 189. Where the threshold showing is made, the court must balance the public interest in the confidentiality of the information in the government's files against the litigant's need for information "with which to pursue a non-frivolous cause of action." *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 (E.D.Pa. 1973); *accord, King,* 121 F.R.D. at 189–90. Plaintiff's submissions in support of disclosure must be similarly factual and non-conclusory. *King,* 121 F.R.D. at 189. Where determination turns on the content of the documents, *in camera* inspection by the court may be appropriate, *King,* 121 F.R.D. at 190; *Kelly,* 114 F.R.D. at 671; *see also In re Franklin National Bank Securities Litigation,* 478 F.Supp. 577, 582 (E.D.N.Y. 1979). That procedure is not a substitute for the factual showing required of either party. *See King,* 121 F.R.D. at 198.

### C. Balancing Test

Judge Weinstein's often-cited decision in *Franklin National Bank* lists the factors most frequently applied in the balancing test:

(1) the relevance of the evidence sought to be protected;

(2) the availability of other evidence;

(3) the "seriousness" of the litigation and the issues involved (sometimes also phrased in terms of "whether the plaintiff's suit is non-frivolous and brought in good faith," *Frankenhauser,* 59 F.R.D. at 344);

(4) the role of the government in the litigation; and

(5) "the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." 478 F.Supp. at 583.

These, however, are only "some of the factors that assume significance" in the balancing of government interests against a litigant's need for disclosure. *Id.* "[T]he ingredients of the test will vary from case to case." *Frankenhauser,* 59 F.R.D. at 344. Other factors that may be applicable in particular cases include

(6) Law enforcement considerations, including ongoing investigations, safety of persons, protection of the identity of informers and similar concerns, *see Frankenhauser,* 59 F.R.D. at 344; *King,* 121 F.R.D. at 191–94;

(7) The public interest in scrutiny of the governmental decision-making process, *Burke,* 115 F.R.D. at 232 (quoting *Franklin National Bank,* 478 F.Supp. at 582);

(8) Whether the information sought is "factual" as distinguished from "evaluative," *Frankenhauser,* 59 F.R.D. at 344; *Burke,* 115 F.R.D. at 231; *but see King,* 121 F.R.D. at 193 (questioning the usefulness of this distinction); *Burka,* 110 F.R.D. at 667 (opinions and recommendations discoverable "[w]here the decision-making process itself is the subject of the litigation)"; and

(9) The "paramount importance of federal civil rights policy." *King,* 121 F.R.D. at 195; *accord, Kelly,* 114 F.R.D. at 660; *Skibo,* 109 F.R.D. at 61; *Wood v. Breier,* 54 F.R.D. at 10–11, (quoted above, p. 380).

Judge Weinstein, in his comprehensive analysis of the factors to be considered when plaintiff in a § 1983 action seeks discovery of police files, cautioned against relying on mere lists of factors, and stressed that the weight to be given to particular factors must be separately determined in each case. *King,* 121 F.R.D. at 191. Nevertheless, "[t]he interest that without doubt looms largest in these cases is the public interest in giving force to the federal civil rights laws." *Id.* at 195.

### D. Application of the Balancing Test in This Case.

Application of the balancing test in this case is made substantially more difficult by the failure of both the defendants asserting the privilege and the plaintiff seeking discovery to make any factual showing with

respect to factors favoring their respective positions. No affidavits have been filed by anyone; both sides have submitted memoranda of law and letters in which legal and factual arguments are intermingled. Notably absent from the record before me is any evidence that the decision to invoke the privilege was made by any department head or other responsible agency official after independent review of the documents.

A rigid application of the rule requiring formal invocation of the privilege by the head of the agency would require disclosure of the documents without further proceedings. *See King,* 121 F.R.D. at 180, and cases cited. Some courts have preferred to give the government a final opportunity to claim the privilege properly, so that State secrets or sensitive law enforcement information not be compromised for merely technical reasons. *E.g., Clift v. United States,* 597 F.2d at 828 n. 1 (directing that government be given "opportunity to supplement" on remand). Neither of those approaches is well suited to the circumstances of this case. To order production of all withheld documents as a penalty for defendants' failure to follow proper procedures would not aid the search for truth or advance this case to trial. The more likely result, in view of the many drafts as to which governmental privilege has been claimed, would be a further proliferation of disputes about irrelevant documents. Nor would judicial economy be served by giving defendants yet another opportunity to claim the privilege properly. That opportunity was afforded after the October 7 conference, and governmental privilege was the precise issue on which memoranda of law were directed to be filed. In this case, where neither state secrets nor police files are involved, there is no justification for giving defendants another bite of the apple. Rather, it is preferable to consider defendants' vague and conclusory papers for what little light they cast on the claims of privilege here asserted, treating the absence of an affidavit from the head of the agency as going to the weight of the defendants' contentions. This approach, which would not necessarily apply in all cases, was used by the Third Circuit in *United States v. O'Neill,* 619 F.2d 222 (3d Cir. 1980), and seems appropriate to the peculiar facts of this case.

The only argument advanced by defendants in support of secrecy is the very general one that disclosure would "impair the functioning" of the Review Board in some unspecified way. (Defts. Mem. at 2; Roberts' October 4 letter at 4). Most of their written submissions are instead directed to rebutting the claimed importance of the documents to plaintiff's case. Relying on *Zinker v. Doty,* 637 F.Supp. 138, 141 (D.Conn.1986), in which the balance was held to tip against disclosure by virtue of plaintiff's failure to establish the relevance of the documents sought, defendants contend that the documents here in issue are not "critical" to plaintiff's case; that they contain no support for his allegations; and that his claims are not "serious." The merits of these contentions will be considered in the context of the specific documents as to which privilege is claimed.

These fall into three categories: (1) memoranda and notes of defendant F.A.O. Schwarz, as to which "executive" privilege is claimed; (2) memoranda and notes of Review Board members which are claimed to be within the scope of both "executive" and "deliberative" privilege; and (3) drafts.

█ 1. *Schwarz Memoranda and Notes.* Schwarz documents 1, 2 and 3 are characterized as "predecisional" on the ground that Schwarz's handwritten comments "reveal his thinking process both as a lawyer evaluating the merits of plaintiff's appeal and as the final decision maker within the Law Department on the appeal." Am. Response, pp. 6–7. The protection of the executive privilege under New York law is limited to *communications* between public officials, *Kwitny,* 102 Misc.2d at 125, 422 N.Y.S.2d at 868 (quoted above, p. 381), and has not been extended to "thinking" in any case that has been brought to the court's attention. Further, defendants have made no factual showing of "public interest requir[ing] that such communications ... not be divulged" that is the *sine qua non* of "executive privilege" under New York law. *See id.* In substance,

their arguments amount to no more than a restatement of the general policy supporting the confidentiality of government documents in some circumstances, with no effort to establish a factual basis for suppression of the particular documents in issue. That approach, which has repeatedly been held inappropriate in § 1983 cases, *e.g.*, *Kelly*, 114 F.R.D. at 658, is outweighed by plaintiff's need for disclosure in the context of this case.

The "thinking process" of Schwarz and the Review Board members is a central issue here. The crux of plaintiff's case is that the defendants acted in concert to force him out of the Law Department in retaliation for his litigation against the prior Corporation Counsel, and that their handling of his appeal from his performance evaluation, through the Review Board to the Corporation Counsel, was part of the retaliatory scheme. Thus, as in *Burka*, 110 F.R.D. at 667, and *AT & T*, 524 F.Supp. at 1389–90, it is the deliberative process itself which is called into question. Defendants' argument that "the review process challenged herein had no impact on plaintiff's employment status and thus is not important to his case" misreads the complaint. Plaintiff here is not seeking review of an adverse decision by the Review Board; he is complaining of a pattern of retaliation of which the Review Board members' conduct in the handling of his appeal is alleged to have formed but one part. The distinction between an attack on an administrative decision and a challenge to the very deliberative process itself is dispositive. *See AT & T*, 524 F.Supp. at 1389–90.

Defendants' two other arguments with respect to the "predecisional" documents generally are directed to rebutting plaintiff's contentions of relevance and need. Neither is persuasive.

First, defendants' argument that plaintiff's claim of retaliatory discharge is not "serious" is precluded by Judge Sprizzo's decision upholding the legal sufficiency of the Amended Complaint. The factual allegations concerning the conduct of the individual defendants pursuant to the alleged scheme are quite specific. *See* Am.Cplt. ¶¶ 37–38, 79; *see also* ¶¶ 43, 44, 48, 49, which despite their extravagant language allege facts which, if proved, could support an inference that defendants, in processing plaintiff's administrative appeal from his performance evaluation, were acting in concert as part of a pattern of retaliation. The issue here is not whether plaintiff will prove his case at trial, but whether, in light of the prior judicial determination that his Amended Complaint states a claim, there is any legally sufficient reason for denying him access to relevant documents. Defendants have established none.

Second, defendants argue that the documents do not support plaintiff's allegations. They ask the court to examine the documents *in camera* for the purpose of verifying this self-serving assertion. Defendants have not, however, made the threshold showing of governmental interest in confidentiality necessary to warrant the burdensome and time-consuming procedure of *in camera* inspection. Pre-trial discovery does not depend upon whether the evidence proves or disproves a party's contention; that is for the trier of fact. The documents in issue are clearly "relevant to the subject matter involved in the pending action" within the meaning of Rule 26(b)(1), Fed.R.Civ.P., and "not privileged" by virtue of defendants' failure to establish facts requiring confidential treatment of these documents.

2. *Review Board Members' Memoranda and Notes.* Although the Amended Response asserts an additional theory of privilege on behalf of the defendant Review Board members, defendants' brief does not separately discuss it. The same general arguments discussed above are relied on by all defendants for all "predecisional" documents. For the reasons already stated, they fall short of meeting defendants' threshold burden with respect to memoranda and notes of the defendant Review Board members, whether the privilege asserted is "executive" or "deliberative."

The following documents are to be produced: Ishmael 1 through 6 inclusive; Ishmael 7 (except for the redacted employee

name); Ishmael 9; DeLeon 3 and 4 and the covering memo dated 1/3/84 forming part of DeLeon 5; the portion of DeLeon 2 consisting of the Lieberman memorandum dated October 12, 1983; Bernstein 1 through 4 inclusive; the portion of Bernstein 7 consisting of the cover memo accompanying the draft decision dated October 12, 1983; Bernstein 8; Borenstein 1, 8–12 inclusive and the cover memo forming part of Borenstein 6; Lieberman 5 and the "buck slips" forming part of Lieberman 1.[3] All of these documents reflect their respective authors' comments on documents comprising plaintiff's appeal, plaintiff's correspondence, or documents generated by other defendants relating to plaintiff's appeal. They are therefore clearly relevant to the issue whether the defendant Review Board members acted in concert by violating their own rules, procedures and policies as part of a retaliatory scheme (*see* Am.Cplt. ¶ 71).

Defendants' objections are sustained as to Bernstein 6; the employee name redacted from Ishmael 7; and Review Board members' drafts. Bernstein 6 is described as "10 pages copied from Treatis [*sic*] re 'Decision making Procedures.'" Am. Response p. 11. While it is unclear what governmental interest requires confidential treatment of this document, its relevance to any issue in this case is equally difficult to discern.[4] The employee named in Ishmael 7 has a right of privacy and is entitled to protection in the absence of a specific showing of relevance to this case, which plaintiff has not made.

3. *Drafts.* Drafts, by their very nature, rarely satisfy the test of relevance. Administrative decisions, like judicial opinions and lawyers' briefs, are often subjected to repeated revisions, including changes in language and style, correction of typo-

graphical errors, editing by superiors of subordinates' work, incorporation of new legal research or a more detailed review of the facts, or simply a more focused view of the issues with each reading. The relevance of such revisions to defendants' state of mind is pure speculation. Absent extrinsic evidence tending to show the relevance of a particular draft, production of these documents is likely to lead only to wasteful fishing expeditions concerning the identification and deciphering of handwriting and the reasons for immaterial revisions. Plaintiff's argument that drafts should be "revealed" [produced] "because it [*sic*] shows their working in their endeavor to cover their tracks which goes to the wilfulness harassment and retaliation aspect of the complaint" (Pl.Mem. at 5) is without factual support.

The following documents are drafts, which need not be produced: Schwarz 8; Ishmael 8; Bernstein 9 through 16 inclusive; Borenstein 2 through 5 inclusive and 7; Lieberman 3. The same reasoning applies to the drafts which comprise portions of DeLeon 2 and 5; Borenstein 6 and Lieberman 1, although that rationale does not excuse production of the covering memos attached to those drafts, discussed above.

## II. ATTORNEY–CLIENT PRIVILEGE.

The attorney-client privilege applies only to confidential communications between attorney and client relating to legal advice. *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1036 (2d Cir.1984); *Colton v. United States*, 306 F.2d 633, 637 (2d Cir.1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). It is the communication which is privileged, not the underlying facts communicated. *In re*

---

**3.** The correspondence from counsel (note 2, above) includes a heated exchange concerning *the production of some buck slips without identifying the documents to which they were originally attached (presumably still withheld).* Plaintiff's letter of October 18 included photocopies of the documents produced, none of which appeared on their face to be material. To the extent that the dispute relates to matching the buck slips produced with the withheld documents that may have been attached, a sim-

ple cross-reference to the document numbers on the original Response would clear this matter up. *That is precisely the kind of issue that should be resolved by counsel in conference pursuant to local Civil Rule 3(f).*

**4.** This is another non-substantive dispute which responsible counsel should have resolved by means of a conference pursuant to local civil Rule 3(f).

*Grand Jury,* 731 F.2d at 1037. Thus, facts are not invested with a privilege merely by being communicated to an attorney and the presence of documents in an attorney's files does not automatically mean that privilege attaches. *See Upjohn Co. v. United States,* 449 U.S. 383, 396, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1981); *Colton,* 306 F.2d at 639.

■ The party asserting this privilege has the burden of establishing all of the elements. *In re Horowitz,* 482 F.2d 72, 82 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). As in the case of governmental privilege, the burden cannot be "discharged by mere conclusory or *ipse dixit* assertions." *In re Grand Jury Subpoena Dated January 4, 1984,* 750 F.2d 223, 225 (2d Cir.1984) (quoting *In re Bonanno,* 344 F.2d 830, 833 (2d Cir. 1965)). In this district, the factual predicate that must be laid by a party claiming privilege is codified in local Civil Rule 46(e)(2), which provides in pertinent part:

(2) Where a claim of privilege is asserted in objecting to any interrogatory or document demand, or sub-part thereof, and an answer is not provided on the basis of such assertion,

(i) the attorney asserting the privilege shall in the objection to the interrogatory or document demand, or sub-part thereof, identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and

(ii) the following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

(A) for documents: (1) the type of document; (2) general subject matter of the document; (3) the date of the document; (4) such other information as is sufficient to identify the document for a subpoena *duces tecum,* including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other;

(B) for oral communications: (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and place of communication; (3) the general subject matter of the communication.

Defendants' Amended Response includes the following "general objection":

Documents received during the pendency of this lawsuit by any defendant from counsel are protected by the attorney client privilege and the attorney work product privilege. Documents prepared for counsel by any defendant during the pendency of this lawsuit are protected by attorney client privilege. Such documents are so clearly covered by the privileges and are so numerous that they have not been indexed. (p. 2, ¶ 1)

■ Defendants' failure to list documents whose subject matter is within the scope of plaintiff's document request on the theory that they are "so clearly covered by the privileges and ... numerous" is improper. Rule 46(e) includes no quantitative exception; nor is a party entitled to make a unilateral determination of the applicability of any privilege. Defendants' violation of Rule 46(e) in this instance is particularly glaring because, as discussed below, their assertions of privilege as to documents specifically enumerated in the Amended Response are based on a misunderstanding of the elements of the attorney-client privilege, which must be presumed also to infect the documents that have not been listed. Plaintiff is therefore entitled to a more specific response. Counsel should be aware that further blanket invocations of privilege without legal or factual basis may result in the imposition of sanctions pursuant to Rule 26(g), Fed.R. Civ.P., and that failure to comply with the explicit requirements of Rule 46(e) will be considered presumptive evidence that the

claim of privilege is without factual or legal foundation.

■ As to the documents which are listed in defendants' Amended Response, it is clear that defendants have applied the wrong standard. The fact that a document is sent or received between attorney and client does not make it privileged unless it contains confidential communications relating to legal advice. Defendants' reliance on *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), is misplaced; the issue there was whether an attorney-client relationship existed between the attorneys and the lower-level employees, not the nature of the communications involved, which clearly were for the purpose of seeking legal advice.

The following documents do not appear, from their descriptions in defendants' Amended Response, to involve any attorney-client communication relating to the giving or receiving of legal advice: Levy 3–7; Schwarz 1, 2 and 3 (memos from plaintiff with Schwarz's handwritten marginal comments; no facts stated suggesting communication between attorney and client); Schwarz 8 (draft opinion; no communication);[5] Schwarz 6 (briefs filed in court are not confidential communications; "buck slips" not privileged in the absence of a showing that they contain legal advice); the portion of Lieberman 6 consisting of buck slip from Schwarz to Lieberman and a "cartoon of 11/7";[6.] Bernstein 5 (handwritten notes on the back of an en-' velope); Borenstein 13–24 inclusive; Gopstein 12 (plaintiff's memo to Schwarz not privileged; Schwarz's memo to his secretary not shown to reflect attorney-client communication); and the portions of Gopstein 2 reflecting Gopstein's conversations with plaintiff (Gopstein and plaintiff were in an adversary, not an attorney-client, relationship).

If any of the documents in this group do in fact contain confidential communications requesting or giving legal advice, however, the client's privilege should not be deemed waived solely by virtue of inadequacies in counsel's presentation. If, after review of the documents by counsel in accordance with the law of this Circuit regarding the kinds of communications protected by attorney-client privilege, it is the position of defendants that any of these documents are so privileged, they may be submitted for *in camera* inspection.[7]

*In camera* inspection may also be appropriate for Gopstein 21 and the portion of Gopstein 2 reflecting Gopstein's conversations with Schwarz. In a letter to the court accompanying the Amended Response, defendants' counsel argues that "in deciding how to rule on plaintiff's appeals from the opinions of the Agency Service and Review Board, Mr. Schwarz, the Corporation Counsel, requested and received the legal advice of Mr. Gopstein, the First Assistant Corporation Counsel, and Mr. Levy, Senior Litigator in the Law Department." The Amended Response itself does not include this information, and is not clear from the

---

5. The erroneous claim of attorney-client privilege as to this document is immaterial in view of my ruling that drafts need not be produced on grounds of relevance. However, the improper assertion of the attorney-client privilege here overlooks the fact that, in issuing his final determination of plaintiff's appeal, Schwarz was acting in an executive capacity as department head, not as legal advisor to his subordinates. The failure to make obvious distinctions of this kind infects a number of the claims of privilege in this document, again burdening the court with matters that should not be in dispute.

6. The balance of Lieberman 6 (apparently the same "memo to file" dated 11/4/83 also appearing as Schwarz 4 and DeLeon 1) is not protected by the attorney-client privilege merely by virtue of having been transmitted to Schwarz or Lieberman, but the issue may be moot if, after *in camera* inspection, defendants' objection to production of the underlying memo is sustained on the narrower ground of the qualified immunity afforded by Rule 26(b)(3), discussed below, Part III.

7. Submissions are to be limited to documents listed in the Amended Response and here ruled not privileged. Documents not previously identified, which are to be listed pursuant to ordering paragraph 3 and the directions given in this Memorandum, are not to be submitted without further order of the court. Resort should not be had to *in camera* inspection unless there is a genuine dispute about the applicability of the privilege which cannot be resolved without reference to the content of the document. *See* Part IV of this Memorandum.

letter what documents are referred to. Facts on which the availability of the privilege turns, such as what capacity a person was acting in at a given time, are better established by affidavits upon personal knowledge rather than by letters from counsel.

Defendants' objections are sustained as to Schwarz 5 and 7 and Gopstein 9 and 17. An attorney's draft of a letter to be sent by a client is protected, *In re Grand Jury*, 731 F.2d at 1037, as are confidential communications between Schwarz (the "client") and departmental attorneys representing or advising him in connection with this litigation.

## III. ATTORNEY WORK PRODUCT

Defendants have claimed "attorney work product privilege" generally with respect to "[d]ocuments received during the pendency of this lawsuit by any defendant from counsel" (general objection 1, quoted above, pp. 386–387). This claim is far broader than the limited protection against disclosure afforded by Rule 26(b)(3), Fed.R. Civ.P., which provides in pertinent part:

> *Trial preparation: Materials.* Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Since Schwarz 5 and 7 and Gopstein 9 and 17 are protected by the attorney-client privilege, it is unnecessary to consider whether the much narrower protection afforded by Rule 26(b)(3) is also applicable to these documents. The remaining documents as to which defendants claim work-product "privilege" fall into three groups:

■ 1. *Attorneys' own notes reflecting factual or legal research relating to this action.* Documents in this category are clearly within the limited scope of Rule 26(b)(3). Levy documents 3 through 7 inclusive and Borenstein 19 qualify for protection on this ground, unless plaintiff has made the requisite showing of "substantial need." Plaintiff's handwritten letter to me dated October 4, 1988, and the attached letter from plaintiff to Judge Sprizzo dated August 16, 1988, refer to the attorney work product objections in only the most general and conclusory terms. His only other argument with respect to privilege (other than the "predecisional" privilege, on which both parties filed supplemental memoranda of law at my request) consists of an opinion relating to the admissibility, under State rules of evidence, of a law firm's intra-office correspondence previously obtained in discovery, which is clearly not in point. "Substantial need" has not been shown.

The DeLeon memorandum dated 11/4/83, which appears as Schwarz 4, DeLeon 1, Lieberman 2 and part of Lieberman 4, may qualify, but it is not entirely clear from the description whether this document goes beyond mere recordation of the fact that plaintiff had threatened to sue one or more of the defendants. Accordingly, it should be produced for *in camera* inspection.

■ 2. *Documents generated by defendants in their decision-making capacities as City officials or employees.* Documents in this category are not protected. The acts performed by a public employee in the performance of his official duties are not "prepared in anticipation of litigation or for trial" merely by virtue of the fact that they are likely to be the subject of later litigation. The qualified immunity provided by Rule 26(b)(3) was never intended to apply to "materials as-

sembled in the ordinary course of business." Advisory Committee Note to Rule 26, 48 F.R.D. 487, 501 (1970); *Westhemeco Ltd. v. New Hampshire Ins. Co.*, 82 F.R.D. 702 (S.D.N.Y.1979); *Garfinkle v. Arcata Nat'l Corp.*, 64 F.R.D. 688 (S.D.N.Y.1974); *see generally* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024 (1970). In *Garfinkle*, Judge Carter observed that "while one might argue that almost all of the work attorneys do, or the advice they dispense, is in anticipation of litigation or its avoidance, the work product immunity requires a more immediate showing than the remote possibility of litigation," 64 F.R.D. at 690, and that that showing is not made merely because "the prospect of litigation is identifiable because of specific claims that have already arisen." *Id.* (quoting *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.*, 47 F.R.D. 334, 337 (S.D.N.Y.1969)).

■ The same reasoning is applicable here. The fact that a public official is a lawyer does not render all his official acts work product. Rather, it is essential to look at both the nature of the document and what "hat" the defendant was wearing when he prepared it. The description of Schwarz 1, 2 and 3 as documents generated by Schwarz in his capacity as "the final decision maker within the Law Department on the appeal" takes these documents out of the category of trial preparation materials. The same is true of Schwarz 8, a draft decision, although defendants' objection to production of this document is sustained on other grounds.

3. *Defendants' Notes Regarding Conversations with Plaintiff.* The following documents are described as recording or referring to "contacts" with the plaintiff or plaintiff's threats to sue: Bernstein 5; Bornenstein 13–24; Gopstein 2 (portion relating to conversation with plaintiff); Gopstein 13, 15, 18–20 and 24. It is not entirely clear from the descriptions of these documents whether they record contemporaneous conversations with the plaintiff, in which case they should be produced, or relate to litigation strategy in the event the threats were realized, in which case they

are protected. Plaintiff is entitled to see the adversary's contemporaneous factual record of conversations with him, with "mental impressions, conclusions, opinions, or legal theories" redacted in accordance with the last sentence of Rule 26(b)(3). Portions so redacted are to be submitted for *in camera* review.

## IV. REMAINING PRETRIAL PROCEEDINGS

Informal procedures for the resolution of discovery disputes by magistrates without formal motion papers are intended to simplify and expedite the discovery process, not to generate more paper, and certainly not to shift to the court the burden of analysis and review that must be done by counsel in the first instance. "Informal" resolution of this dispute over claims of privilege required two pretrial conferences (one before Judge Wood and another before me) and involved a proliferation of correspondence from counsel, without meaningful briefs from either side or affidavits going to the facts. Some of the unnecessary complexity of this dispute arose from defendants' blanket invocations of privilege without analysis, ignoring both the local rules and applicable case law in this Circuit. Much of it also flowed from the utter failure of the consultation process required by local Civil Rule 3(f). Since these informal procedures have proved unworkable in the context of this case, new guidelines for resolution of future disputes are necessary.

First, any further discovery disputes that counsel cannot resolve without judicial intervention must be brought to the attention of the court by formal motion pursuant to Rule 37. Facts relating to such motions must be stated in affidavits and legal arguments in memoranda of law; letters will not be considered in relation to any such motions.

Second, the requirements of local Civil Rule 3(f) must be observed. At a minimum, counsel should confer in person or by telephone to attempt to fashion practical solutions to problems that arise. Failure to show good-faith compliance with this re-

quirement may be a basis for denying expenses which might otherwise be awarded to the prevailing party on a Rule 37 motion.

Finally, since *in camera* inspection of at least some documents is likely to be necessary under Parts II and III of this opinion, counsel are cautioned that that procedure does not relieve the parties of the obligation to do their own work. *In camera* inspection is not a device for shifting the work of the parties and counsel to the court and should occur only when there is a genuine dispute concerning the applicability of a privilege that cannot be resolved without consideration of the content of the document. Accordingly, only those documents should be submitted for *in camera* inspection which counsel for the defendants determines, after examination in light of this opinion, that to the best of counsel's knowledge, information and belief formed after a reasonable inquiry the claim of privilege is consistent with the Federal Rules of Civil Procedure and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law and not interposed for any improper purpose. *See* Rule 26(g), Fed.R.Civ.P., made applicable by the defendants' service of the Amended Response, signed in accordance with the requirements of Rule 26.

For the foregoing reasons, it is hereby ORDERED:

1. Subject to the provisions of paragraph 2, the following documents are to be produced to plaintiff within 15 days of entry of this Order: Schwarz 1–3; Schwarz 6; Ishmael 1–6; Ishmael 7 (with employee name redacted); Ishmael 9; DeLeon 3 and 4 and the covering memo dated 1/3/84 forming part of DeLeon 5; the portion of DeLeon 2 consisting of the Lieberman memorandum dated October 12, 1983; Bernstein 1–5; Bernstein 7 (covering memo only); Bernstein 8; Borenstein 1, 8–24 inclusive and the cover memo forming part of Borenstein 6; Lieberman 5 and the "buck slips" forming part of Lieberman 1; portion of Lieberman 6 consisting of "buck slip" and cartoon; Gopstein 2, 12, 21; DeLeon memorandum dated 11/4/83, which appears as Schwarz 4, DeLeon 1, Lieber-

man 2 and part of Lieberman 4; Gopstein 13, 15, 18–20 and 24.

2. Documents which defendants' counsel, after review in accordance with Parts II and III of this memorandum, desires to submit for *in camera* inspection, are to be submitted within 20 days of the entry of this order, together with a list of the documents submitted. The list, which is to be simultaneously served on plaintiff, must describe the documents with the particularity required by local Civil Rule 46(e). No additional materials whether in the form of letters, affidavits or other materials, are to be submitted in connection with *in camera* review without further order of the court.

3. Defendants are required to serve upon plaintiff within 30 days of this order a list of all responsive documents (not previously listed) in their possession, custody or control as to which attorney-client privilege is claimed and, as to each document listed, all of the information called for by local civil Rule 46(e)(2).

4. Defendants' objections to production are sustained with respect to the following documents: Levy 3–7; Schwarz 5, 7, 8; Ishmael 8; Bernstein 6 and 9–16; the employee name redacted from Ishmael 7; Borenstein 2–5, 7 and 19; Lieberman 3; Gopstein 9 and 17; and, as to the following documents, those portions not specifically directed to be produced pursuant to ¶ 1 of this Order; DeLeon 2 and 5; Bernstein 7; Borenstein 6; Lieberman 1.

5. In the event of further disputes relating to discovery, including disputes relating to compliance with this order, any party may move pursuant to Rule 37, Fed.R. Civ.P., without further requests for an informal conference pursuant to local Civil Rule 3(*l*). All other applicable requirements of Rule 3 must be complied with.

6. Extensions of time for compliance with any provision of this order will be granted only for good cause shown by affidavit.

The foregoing determination is made pursuant to 28 U.S.C. § 636(b)(1)(A). Any party may object to this determination by filing written objections in accordance with

the procedure specified in Fed.R.Civ.P. 72(a) and Rule 7 of the local Rules for Proceedings before Magistrates.

Dated: New York, New York
 March 29, 1989