**DEPARTMENT OF ECONOMIC DEVELOPMENT, Plaintiff,**

v.

**ARTHUR ANDERSEN & CO. (U.S.A.), Arthur Andersen & Co. (Republic of Ireland), and Arthur Andersen & Co. (United Kingdom), Defendants–Third–Party Plaintiffs,**

v.

**Alex H. FETHERSTON, C. Shaun Harte, Ronald J. Henderson, Anthony S. Hopkins, and James Sim, Third–Party Defendants.**

No. 85 Civ. 1292(CES).

United States District Court, S.D. New York.

Oct. 18, 1991.

Mudge Rose Guthrie, Alexander & Ferdon by Malcolm R. Schade, Walter P. Loughlin, Robert Sidorsky, Felicia A. Mennin, Susanne Roxbury, New York City, for plaintiff.

Breed, Abbott & Morgan by James D. Zirin, James J. Sabella, Paul D. Connuck, New York City, for defendants-third-party plaintiffs.

## MEMORANDUM DECISION

STEWART, District Judge:

Defendants move pursuant to Rules 34 and 37 of the Federal Rules of Civil Procedure seeking an order directing plaintiff to produce certain documents. Plaintiff has withheld the requested documents claiming executive privilege as well as attorney-client and work product privileges.

## FACTS

Plaintiff Department of Economic Development ("DED"), a department of the British Government, brings this action seeking $500,000,000 in RICO treble damages against defendants Arthur Anderson & Co. (USA), Arthur Anderson & Co. (Republic of Ireland) and Arthur Anderson & Co. (United Kingdom) (hereinafter collectively "AA"). This action arises out of the British Government's 1978 investment in DeLorean Motor Cars Limited (DMCL), a Belfast-based company headed by John DeLorean.

DED's predecessors in interest, the Northern Ireland Development Agency ("NIDA") and the Department of Commerce ("DOC") are agencies of the British Government empowered to extend loans and grants to businesses to promote the industrial development of Northern Ireland. NIDA and DOC entered into a contract (the "Master Agreement") with various corporations controlled by John DeLorean to manufacture a sports car in Dunmurry, Northern Ireland. Pursuant to the Master Agreement, NIDA and DOC agreed, *inter alia*, to purchase all of the 17,757,000 preferred shares of DMCL stock. NIDA and DOC also agreed to extend a variety of grants, loans, and loan guarantees. The DeLorean Motor Company ("DMC") undertook to provide financial statements to NIDA and DOC encompassing DMC and its subsidiaries, including DMCL.[1] AA, as DMC's auditors, prepared reports certifying these statements.

During 1981–82, amid allegations of mismanagement and fraud, the various DeLorean corporations began to collapse. In 1982, DMCL was placed in receivership, and DMC filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code. In 1983, the Chapter 11 proceeding was converted into a Chapter 7 liquidation proceeding.

In the wake of DMCL's collapse, the British Government commenced a negligence action against AA in the High Court

---

1. DMC was incorporated in Michigan in 1975 for the purpose of developing, manufacturing, and marketing the sports car. DMCL was later formed to manufacture the car in Northern Ireland.

in London. The U.K. action was subsequently stayed.

In February of 1985 this action was filed.[2] Basically, DED's complains that DMC's financial statements were false and misleading and that by certifying these statements AA substantially assisted De-Lorean and others in the execution of a fraudulent scheme to siphon money from DMC and DMCL.

On September 14, 1988 AA served upon DED AA's first request for production of documents. DED has withheld the requested documents claiming executive privilege as well as attorney-client and work product privileges.

## DISCUSSION

AA argues that in order to sue in this court, DED must make full disclosure of all relevant documents as provided by U.S. Law, irrespective of any executive privilege claim. Alternatively, AA argues that DED's claims of executive privilege should be rejected as lacking basis in fact and as substantively and procedurally defective as a matter of law. Further, AA argues that DED's claims of attorney-client and work product privileges must be rejected as similarly flawed. Finally, AA argues that documents in the possession of the Metropolitan Police Force also must be produced.

### DED MUST MAKE FULL DISCLOSURE AS PROVIDED BY U.S. LAW

■ A foreign sovereign, appearing as a plaintiff in a court of the United States, must subject itself to United States discovery procedures. *Compagnie Francaise d'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 32 (S.D.N.Y.1984) (citing *Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 134 & n. 2, 58 S.Ct. 785, 790 & n. 2, 82 L.Ed. 1224 (1938)); *see also Ghana Supply Comm'n v. New England Power Company*, 83 F.R.D. 586 (D.Mass.1979) (by instituting civil action in a United States court, foreign sovereign waived any privilege it otherwise had to prevent disclosure

of relevant information sought by defendant). To permit DED to evade their discovery responsibilities would unfairly disadvantage the defendants. *See Compagnie Francaise*, 105 F.R.D. at 32.

■ When a plaintiff files an action it may be said that he automatically waives certain privileges by "implied intention." *See Peck v. United States*, 522 F.Supp. 245, 246 (S.D.N.Y.1981). This is true even when the plaintiff is a governmental entity. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958) ("The government as a litigant is, of course, subject to the rules of discovery."); *See also* McCormick, *Evidence* § 109 (3d ed. 1984). "By invoking the court's aid by bringing suit, the government seems clearly to waive any claim of executive immunity.... [T]he government as plaintiff in a civil action [may not] proceed affirmatively against a defendant while at the same time seeking under the guise of privilege to deprive the defendant of evidence useful to the defense of the action." *Id.* (footnotes omitted).

■ Even when applying a balancing approach, rather than the above theory of automatic waiver, we find that DED must disclose the relevant documents. The most significant factors to be considered when deciding whether a government must disclose otherwise privileged information include: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable; (6) the societal interest of accurate judicial fact finding; and (7) the public interest in opening for scrutiny the government's decision making process. *See In re Franklin Nat'l Bank Securities Litigation*, 478 F.Supp. 577, 582–83 (E.D.N.Y.1979); *United States v. Hooker Chem. & Plastics Corp.*, 123 F.R.D. 3, 12 (W.D.N.Y.1988); *Burke v. New York City Police Dep't*, 115

---

**2.** One advantage for DED in filing its action in this court is the availability of treble damages. Treble damages are not similarly available under the controlling British law.

F.R.D. 220, 232 (S.D.N.Y.1987). When balancing these factors "[t]he federal interest in full development of the facts should be given the greatest weight...." *Skibo v. City of New York*, 109 F.R.D. 58, 61 (E.D.N.Y.1985). Further, in evaluating the procedural fairness of ordering disclosure, the role of the government as plaintiff is instrumental to the determination of whether governmental claims of privilege must give way. *Hooker Chem.*, 123 F.R.D. at 11–12.

When balancing the interests in this case, it is useful to recall that there is a strict order of confidentiality which has been in place in this case since the outset. Therefore, the concerns regarding public disclosure of this material are significantly minimized.[3] After an *in camera* review of many of the documents in question, it is clear that this material is relevant to the defendants.[4] Additionally, the British Government's position as plaintiff in this case tips the balance of interests in favor of disclosure of the documents.

DED argues that the documents requested contain records of the deliberative process of departments and agencies of the British Government and therefore are not discoverable. However, by asserting claims of fraud against AA, the British Government necessarily places at issue questions of knowledge, justifiable reliance and causation. Specifically, at issue is the British Government's knowledge of DeLorean's activities, the extent of that knowledge, whether they justifiably relied upon AA's reports or whether, as the defendants contend, the government chose to ignore certain information it had before it and nonetheless approve the grants for political reasons. Therefore, the deliberations of the government regarding this matter are at issue.

■ Where the deliberations of government are genuinely at issue, privileges designed to shield the deliberative process from public scrutiny "may not be raised as a bar against disclosure...." *Burka v. New York City Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y.1986). *See also Grossman v. Schwarz*, 125 F.R.D. 376, 385 (S.D.N.Y.1989) (disclosure ordered where the thinking or deliberative process of governmental review board was itself called into question); *United States v. AT & T Co.*, 524 F.Supp. 1381, 1389–90 (D.D.C.1981) (thought process of FCC staff members discoverable notwithstanding claim of deliberative process privilege where motivation for agency's decision was at issue). Moreover, when the factors shaping decisions made by government officials are at issue, privileges designed to shield the deliberative process "may not be raised as a bar against disclosure...." *Burka*, 110 F.R.D. at 667.

■ Where the adjudication of fraud claims turns upon issues of knowledge, reliance, and causation, direct evidence of the deliberative process is irreplaceable. The governmental privilege must give way. *See State of New York v. Cedar Park Concrete Corp.*, 130 F.R.D. 16 (S.D.N.Y.1990) (State Attorney General waived attorney-client, work-product and executive privileges by pleading fraudulent concealment and thus placing in issue what he knew or should have known); *United States v. Poindexter*, 732 F.Supp. 142, 148–50 (D.D.C.1990) (ordering former President Reagan to submit to oral deposition where issues as to knowledge and apparent acqui-

---

**3.** A government's concern with secrecy may properly be addressed by protective orders. *See Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1334 (D.C.Cir.1984); *White v. New York City Health & Hospitals Corp.*, 1990 WL 33747, 1990 U.S.Dist. Lexis 3008 (S.D.N.Y. Mar. 19, 1990); *King v. Conde*, 121 F.R.D. 180, 190 (E.D.N.Y.1988); *Lizotte v. New York City Health & Hosp. Corp.*, 1989 WL 260217, 1989 U.S.Dist. Lexis 14114 (S.D.N.Y. Nov. 28, 1989).

**4.** DED submitted under seal for *in camera* review many of the documents for which they are claiming executive privilege. However, DED has withheld, even from the court's *in camera* inspection, many documents for which they are claiming attorney-client and work product privilege. DED has also withheld certain documents for which they are claiming executive privilege arising from the fact that these documents concern the British Government's deliberative processes.

escence in Iran–Contra activities were material to General Poindexter's defense).

Accordingly, DED claims of executive privilege fail and DED must make full disclosure of the disputed documents.

## DED'S CLAIMS OF ATTORNEY-CLIENT PRIVILEGE FAILS AS A MATTER OF LAW

■ Blanket claims asserting attorney client privileges are improper. *In re Shopping Carts Antitrust Litigation,* 95 F.R.D. 299, 305–06 (S.D.N.Y.1982). The privilege must be determined on a case by case analysis of the relevant factors not upon a blanket assertion of the privilege. *Id.* The party asserting an attorney-client privilege must provide sufficient information for the court to reasonably conclude that the communication at issue: (1) concerned the seeking of legal advice; (2) was between a client and an attorney; (3) was related to legal matters; and (4) is at the client's instance permanently protected. *Id.* at 306 (citing *Federal Trade Commission v. Shaffner,* 626 F.2d 32, 37 (7th Cir. 1980)). The party asserting the privilege bears the burden of presenting the underlying facts or circumstances demonstrating the existence of the privilege. *Id.*

■ A document is not privileged merely because it was sent or received between an attorney and client. The document must contain confidential communication relating to legal advice. *See von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 146 (2d Cir.1987), cert. denied, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987) (quoting *United States v. Kovel,* 296 F.2d 918, 922 (2d Cir.1961)). Further, the privilege does not protect facts obtained by an attorney from independent sources which were thereafter conveyed to the client. *See Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.,* 111 F.R.D. 76, 80 (S.D.N.Y.1986).

■ Clearly, a government agency can be a 'client' and agency lawyers can function as 'attorneys' within the relationship contemplated by the privilege. *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 863 (D.C.Cir.1980). However, "[w]hen a lawyer acts as a business or economic advisor, there is no special relationship to give rise to a privilege to protect his advice from disclosure." *Standard Chartered Bank,* 111 F.R.D. at 80. *See also, Coastal Corp. v. Duncan,* 86 F.R.D. 514, 521 (D.Del.1980) (government attorneys function primarily as policy-makers rather than as lawyers).

DED fails to meet its burden of presenting the underlying facts or circumstances demonstrating the existence of the privilege.

## DED'S CLAIMS OF WORK PRODUCT PRIVILEGE ALSO FAIL

■ Work prepared in anticipation of litigation is subject to qualified immunity. Fed.R.Civ.P. 23(b)(3). Immunity does not, however, apply to materials assembled in the ordinary course of business. *See Westhemeco Ltd. v. New Hampshire Ins. Co.,* 82 F.R.D. 702 (S.D.N.Y.1979); *Garfinkle v. Arcata Nat'l Corp.,* 64 F.R.D. 688 (S.D.N.Y.1974). Acts of a public employee in performance of his official duties are not prepared in anticipation of litigation or trial. "The fact that a public official is a lawyer does not render all his official acts work product. Rather, it is essential to look at both the nature of the document and what 'hat' [the attorney] was wearing when he prepared it." *Grossman v. Schwarz,* 125 F.R.D. 376, 389 (S.D.N.Y.1989).

Accordingly, DED's assertion of work product privilege fails.

## THE METROPOLITAN POLICE FORCE DOCUMENTS ARE NOT DISCOVERABLE

■ AA seeks production of files of the Metropolitan Police Force (the "MPF") relating to its October 1981 investigation of allegations of financial wrongdoing by De-Lorean.[5] DED argues that MPF is not a department or agency of the British

---

**5.** In 1981 allegations of financial wrongdoing on the part of DeLorean were made to the British Government. On October 3, 1981, a press release was issued stating that the matter was referred to the MPF for investigation.

Government, its files are not subject to the control of DED and therefore DED cannot be required to produce these documents.

In the leading treatise on British administrative law Professor H.W.R. Wade states that the police "owes obedience to no executive power outside the police force. The chain of command therefore terminates at the chief constable, who is in effect an independent authority, and must act free from all political influence, whether national or local." H.W.R. Wade, *Administrative Law*, 145 (6th ed.1988) (footnote omitted) (hereinafter *"Wade"*). The Commission of the MPF is appointed by and holds office under the crown. This does not, however, make the police into a department or agency of the crown. Professor Wade states:

> They do indeed hold office under the Crown: when appointed they swear that they will well and truly serve the sovereign in the office of constable. And a policeman has been held to be a 'person holding office under His Majesty' so as to make information obtained from him subject to the Official Secrets Acts. But the oath no more makes him a servant of the Crown, in the sense of the relationship of master and servant, than does the oath taken by a judge. *Wade* at 146 (footnotes omitted).

Apparently, the MPF is significantly independent from the British Government. Requiring DED to produce documents in the control of the MPF in this case is inappropriate. These documents are not in DED's "possession, custody or control" within the meaning of Rule 34 of the Federal Rules of Civil Procedure.

Additionally, the information AA seeks from the MPF is available from other sources. At the time that the MPF conducted its investigation they provided to the Department of Director of Public Prosecutions for England and Wales, a copy of the investigating officer's report, together with copies of the witness statements taken by the police officers and the documents obtained from Mr. Winterton. *See* Memorandum of Plaintiff Department of Economic Development in Opposition to the Motion to Compel Discovery, at 96. Copies of these documents are now in the possession of the Crown Prosecution Service, of which the Director of Public Prosecution is the head. Copies of these documents are also in the possession of the Legal Secretariat to the Law Officers and the Department of the Director of Public Prosecutions for Northern Ireland. *Id.* · All of the above are agencies or departments of the British Government and therefore DED could be compelled to produce the requested document from any one of these sources. Indeed, DED asserts that all relevant documents from these agencies, not subject to claims of privilege, have already been produced to AA. *Id.* Although, there is no way of knowing whether any documents on this subject remain exclusively in the MPF files, it certainly appears that the documents most central to the investigation would be in the hands of one of these other departments or agencies. *Id.* at 97.

The police report is among the documents for which DED is claiming executive and work product privilege. A copy of the report has been provided to the court for *in camera* inspection. Because we have already found that DED's claims of privilege fail, the police report is discoverable by AA.

## CONCLUSION

Defendants' motion pursuant to Rules 34 and 37 of the Federal Rules of Civil Procedure seeking an order directing plaintiff to produce certain documents is granted in part and denied in part. All documents for which plaintiff is claiming executive privilege as well as attorney-client and work product privileges must be produced. Documents in the possession of the Metropolitan Police Force are not in the control of DED within the meaning of Rule 34 of the Federal Rules of Civil Procedure and therefore DED cannot be compelled to produce those documents.

SO ORDERED.