**MR. AND MRS. "B," Plaintiffs,**

v.

**THE BOARD OF EDUCATION OF THE SYOSSET CENTRAL SCHOOL DISTRICT, et al., Defendants.**

No. 96–CV–5752(FB)(RML).

United States District Court, E.D. New York.

Aug. 31, 1998.

Sullivan & Cromwell, New York City by Cynthia Y. Bookhart, for Plaintiffs.

Serchuk & Zelemayer, White Plains, NY by Steven Coploff, for Defendant The Board of Education of the Syosset School District.

Owen Barrie Walsh, County Attorney of Nassau County, Mineola, NY by Susan M. Tokarski, Deputy County Attorney, for Defendant Marjorie Shuart.

### MEMORANDUM AND ORDER

LEVY, United States Magistrate Judge.

In this action plaintiffs Mr. and Mrs. "B" ("plaintiffs") allege that their child has been deprived of appropriate educational services under federal and state laws. Defendant Marjorie Shuart ("defendant" or "Commissioner Shuart"), Commissioner of the Nassau County Department of Mental Health, Mental Retardation and Developmental Disabilities ("the Department"), seeks a protective order precluding disclosure of five documents on the grounds of the deliberative process privilege, the attorney-client privilege, and certain confidentiality provisions of the New York Education Law. (Letter from Susan M. Tokarski to the Honorable Robert Levy, dated February 13, 1998 ("Tokarski letter").)[1] The documents were submitted for *in camera* review. Plaintiffs submitted their opposition on March 9, 1998. For the reasons explained below, defendant's motion is granted in part and denied in part.

*Attorney–Client Privilege*

Defendant asserts the attorney-client privilege as a bar to disclosure of Documents 2 and 13. A party asserting the attorney-client privilege must "provide sufficient information for the court to reasonably conclude that the communication at issue: (1) concerned the seeking of legal advice; (2) was between a client and an attorney; (3) was related to legal matters; and (4) is at the client's instance permanently protected." *Department of Economic Dev. v. Arthur Andersen & Co.*, 139 F.R.D. 295, 300 (S.D.N.Y. 1991) (citations omitted). *See also Bank Hapoalim, B.M. v. American Home Assurance Co.*, No. 92 Civ. 3561, 1993 WL 37506, at *2 (S.D.N.Y. Feb.8, 1993). The party asserting the privilege "bears the burden of presenting the underlying facts or circumstances demonstrating the existence of the privilege." *Department of Economic Dev.*, 139 F.R.D. at 299 (citation omitted).

Document 2 is a memorandum, with attachments, from Commissioner Shuart to Robert L. Olden, Deputy County Executive, dated July 10, 1995, entitled "PRE–SCHOOL HANDICAPPED CHILDREN'S PROGRAM Legal Issue." Defendant's entire argument in support of her assertion of the privilege is as follows: "In addition, Commissioner Shuart also asserts the Attorney/Client privilege for Document Number 2. The document seeks advise [sic] from the County Attorney as to the legality of the proposed position." (Tokarski letter at 1.) Defendant does not claim that either she or Mr. Olden is an attorney or that they had an attorney-client relationship, necessary elements for asserting the privilege. Commissioner Shuart offers no analysis of the privilege or any explanation why it should apply to a communication between non-lawyers. The court notes that although there is a notation "cc: Owen Walsh, County Attorney . . . ." at the end of the memorandum, the attorney-client privilege is not necessarily extended to a communication between non-lawyers merely because a copy of the document

---

1. Although defendant also asserted the attorney work product privilege in a prior response with respect to Document 2, she apparently has abandoned that claim, as it was not raised in the Tokarski letter and, in any case, is not applicable to any of the documents at issue herein, none of which were written by, or purport to contain the mental impressions of, an attorney.

was sent to an attorney. *See United States Postal Serv. v. Phelps Dodge Refining Corp.,* 852 F.Supp. 156, 160 (E.D.N.Y.1994).[2] Thus, because defendant has failed to meet her burden of "presenting the underlying facts or circumstances demonstrating the existence of the privilege," *Department of Economic Dev.,* 139 F.R.D. at 299, the memorandum is not protected.

■ Document 13 is a memorandum from Commissioner Shuart to County Attorney Owen Walsh ("Shuart memorandum"), dated December 11, 1995, seeking legal advice in connection with an impending impartial hearing. Because the majority of the Stuart memorandum contains confidential communications to an attorney for the purpose of obtaining legal advice, this portion is privileged. *Id.* The third paragraph of the Stuart memorandum, however, merely relays factual information and, accordingly, is not privileged. *See United States v. Davis,* 132 F.R.D. 12, 15 (S.D.N.Y.1990) (document merely discussing factual circumstances not protected by attorney-client privilege).

■ Attached to the Stuart memorandum is a memorandum from Toni Monson to Commissioner Shuart ("Monson memorandum"), dated October 16, 1995, summarizing a meeting held with the parents of a child with disabilities regarding the child's program needs. The Monson memorandum was not written by or to an attorney but appears to be a report to Commissioner Shuart of the meeting, generated nearly two months before the Shuart memorandum to the County Attorney. Thus, it is not protected by the attorney-client privilege and must be produced. However, prior to producing the document, defendant shall redact the names of the parents and the child, along with any identifying information, consistent with the family's privacy rights under state law.

### The Deliberative Process Privilege

■ To invoke the deliberative process privilege, defendant must satisfy two requirements. *Hopkins v. United States Dep't of Hous. and Urban Dev.,* 929 F.2d 81, 84 (2d Cir.1991). First, the document for which the privilege is being asserted must be " 'predecisional,' that is, 'prepared in order to assist an agency decisionmaker in arriving at his decision.' " *Id.* at 84 (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 184, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975)). *See also EPA v. Mink,* 410 U.S. 73, 90, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), *superceded by statute on other grounds,* 5 U.S.C. § 552(b)(1); *FTC v. Warner Communications Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984) (to satisfy the deliberative process privilege, a document must be predecisional, meaning that "it must have been generated before the adoption of an agency's policy or decision"). Second, the document must contain "deliberative" material, that is, material " 'actually . . . related to the process by which policies are formulated.' " *Hopkins,* 929 F.2d at 84 (quoting *Jordan v. United States Dep't of Justice,* 591 F.2d 753 (D.C.Cir.1978)), *overruled in part on other grounds, Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051 (D.C.Cir. 1981). *See also Warner Communications,* 742 F.2d at 1161 (a document is deliberative if it contains "opinions, recommendations, or advice about agency policies"). The privilege does not extend to purely factual material. *Hopkins,* 929 F.2d at 85. To invoke the privilege, the agency must provide " 'precise and certain' reasons for preserving the confidentiality of the requested information." *Mobil Oil Corp. v. Department of Energy,* 520 F.Supp. 414, 416 (N.D.N.Y.1981) (quoting *Coastal Corp. v. Duncan,* 86 F.R.D. 514, 516–17 (D.Del.1980)).

■ Moreover, the deliberative process privilege is not absolute. Once the privilege is established, the court must balance the interests supporting and opposing the disclosure. *In re Franklin Nat'l Bank Securities Litig.,* 478 F.Supp. 577, 582 (E.D.N.Y. 1979). *See also City of New York v. United States Dep't of Commerce,* 822 F.Supp. 906, 930 (E.D.N.Y.1993) (the deliberative process privilege "is a qualified or discretionary one that turns on a balance of competing policy claims"), *vacated,* 34 F.3d 1114 (2d Cir.1994),

---

**2.** Commissioner Shuart's submission did not even mention the notation or demonstrate how it might bring the memorandum within the protection of the attorney-client privilege.

*cert. granted sub nom. Wisconsin v. City of New York,* 515 U.S. 1190, 116 S.Ct. 38, 132 L.Ed.2d 919 (1995), *rev'd,* 517 U.S. 1, 116 S.Ct. 1091, 134 L.Ed.2d 167 (1996). In balancing these interests, "[f]oremost is the interest of the litigants, and ultimately of society, in accurate judicial fact finding." *Franklin Nat'l Bank Securities Litig.,* 478 F.Supp. at 582. On the other hand, the government has an interest in effective executive functioning. *Id. See also United States v. Nixon,* 418 U.S. 683, 705, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) ("Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances … to the detriment of the decisionmaking process."); *Mink,* 410 U.S. at 87, 93 S.Ct. 827 ("[E]fficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.'") (quoting S.Rep. No. 89–813, at 9 (1965)). Only when the latter outweighs the former is the government entitled to the deliberative process privilege. *See Franklin Nat'l Bank Securities Litig.,* 478 F.Supp. at 582. In this balancing of competing interests, some of the factors that assume significance are:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence …; (iii) the "seriousness" of the litigation and the issues involved …; (iv) the role of the government in the litigation …; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.* at 583 (citations omitted).

 Defendant asserts that Documents 2 and 8 are protected from disclosure by the deliberative process privilege. Defendant alleges that Document 2 "seeks [sic] the County Executive to establish a policy" and that "Commissioner Shuart lacked the authority to establish a policy for Nassau County independent of the County Executive." (Tokarski letter at 2.) According to defendant, "[t]he memo seeks guidance from the County Executive and the County Attorney" and is "merely a communication between Commissioner Shuart and the County Executive that expressed opinions of the Commissioner as to a potential position that the County of Nassau could take. No position was ever taken by the County of Nassau regarding this issue." (*Id.*)

As described above, Document 2 is a memorandum from Commissioner Shuart to Deputy County Executive Robert L. Olden. In it, defendant requests legal assistance in defending the Department's position regarding intensive therapy for certain pre-school students with disabilities. First, the memorandum contains factual materials that can be readily segregated and do not qualify for protection under the privilege. *See Hopkins,* 929 F.2d at 85 (privilege does not extend to purely factual materials). Such factual materials are disclosable, provided that the names of the parent and the program that appear in the last paragraph on page two are redacted.

Moreover, it is apparent from a reading of the document itself that the Department had previously decided to oppose the approval of the intensive services in question, a decision which is at the heart of this lawsuit. Document 2 makes clear that Commissioner Shuart's purpose in writing the memorandum was not to recommend the adoption of a policy, but: (1) to obtain legal advice to determine whether the arguments of parent advocates demanding the provision of these services were legally correct; and (2) to obtain legal assistance at an impending hearing to support the Department's opposition to these services. (Document 2 at 3 ("I believe that a legal and professional consultation is necessary for our successful defense of this issue.").) Nowhere does the memorandum suggest, recommend or request the adoption of a County policy toward services for pre-school children with autism or intimate that the Department's position was under reconsideration. Nor does defendant's submission identify any policy that was purportedly under consideration. Defendant's meager showing, consisting of brief conclusory assertions that are belied by the documents submitted for inspection, fails to satisfy defendant's burden of establishing the basic elements of the deliberative process privilege. *See Mobil Oil*

*Corp.*, 520 F.Supp. at 416. Accordingly, Document 2 is not privileged and must be produced. However, as discussed in more detail below, even if the privilege were to apply, the interests in disclosure outweigh the Department's need for confidentiality.

■ Attached to Document 2 are documents containing personal information regarding children who need special services. These documents consist entirely of factual materials, such as reports of meetings with families of pre-school children and analyses of the cost of various programs, which do not qualify for protection under the deliberative process privilege. *See Hopkins,* 929 F.2d at 85. Prior to producing these documents, defendant shall redact all identifying information relating to the children and their families.

Document 8 is a memorandum from Commissioner Shuart to Deputy County Executive Olden, dated October 3, 1995, titled "PRE–SCHOOL HANDICAPPED CHILDREN'S PROGRAM Applied Behavioral Activity Services." Attached to the memorandum is a "discussion paper" with the heading "Policy Statement Pre–School Handicapped Children's Services." Defendant asserts that the privilege applies because the documents are pre-decisional and urge the County Executive to adopt a proposed position with regard to the provision of Applied Behavioral Activity Services to autistic pre-school children. Plaintiffs respond that the privilege does not attach because the Department had already adopted such a policy and that, even if the privilege were to apply, under the balancing test the plaintiffs' interests in disclosure outweigh defendant's need for confidentiality.

■ After examining Document 8, the court agrees with plaintiffs. First, large portions of both the memorandum and the policy statement contain factual materials which are not privileged and can easily be segregated and disclosed. *See Hopkins,* 929 F.2d at 85. In addition, as explained above, the documents indicate that the Department had previously adopted a policy regarding the provision of Applied Behavioral Activity services for autistic pre-school children. The question addressed in the memorandum is not

whether the County should oppose or support the provision of these services, but rather how and in what forum the County Executive should advocate for the Department's position. Again, defendant's submission does not explain how Document 13 is "'part of a process by which governmental decisions and policies are formulated'" (*see NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975) (quotation omitted)), or articulate "precise and clear reasons" for preserving the confidentiality of these materials. *Mobil Oil Corp.,* 520 F.Supp. at 416.

■ However, even if Documents 2 and 8 were pre-decisional and related to governmental deliberations, the deliberative process privilege is a qualified privilege. *United States Postal Serv. v. Phelps Dodge Refining Corp.,* 852 F.Supp. 156, 165 (E.D.N.Y.1994). For example, "[t]he privilege may be inapplicable where the agency's deliberations are among the central issues in the case." *Natural Resources Defense Council, Inc. v. Fox,* No. 94 Civ. 8424, 1998 WL 158671, at *4 (S.D.N.Y. Apr.6, 1998). In determining whether the privilege applies, the court must weigh the plaintiffs' need for disclosure against the governmental interest in confidentiality, considering the factors set forth in *Franklin Nat'l Bank Securities Litig.,* 478 F.Supp. at 582. There is no question that the documents are relevant to this litigation, that the issues raised in this case are serious ones involving the application of federal statutory guarantees of appropriate educational services to children with disabilities, and that the Department's position on these services is pivotal to this lawsuit. Because of the nature of the rights involved, which implicate the civil rights of pre-school children, the need for accurate judicial fact finding is great. Defendant has not alleged that the evidence contained in the documents is available elsewhere. Finally, defendant has not argued that the release of the documents would reduce governmental effectiveness by inhibiting future discussion of policy options among government employees who feared violation of their secrets. Indeed, defendant's minimal submission does not address any of the factors that courts are required to

consider in weighing the competing interests for and against disclosure. *See Franklin Nat'l Bank Securities Litig.*, 478 F.Supp. at 583. For this reason alone defendant, who bears the burden of demonstrating that the privilege bars disclosure, fails to meet her burden. *See Mobil Oil Corp.*, 520 F.Supp. at 416. In addition, after weighing the factors described above, the court finds that the interests favoring disclosure outweigh defendant's interests in confidentiality. Accordingly, defendant shall produce Documents 2 and 8. Prior to their production, defendant shall redact all information that identifies a child with disabilities or his or her parents.

### Confidentiality Under State Education Law

Defendant also seeks to withhold Documents 2, 21, and 27 as confidential under the New York Education Law. Defendant's submission does not identify which provisions of the Education Law she is invoking.[3] The court has carefully reviewed each of the documents and attachments and finds that the confidentiality of the children can easily be safeguarded by redacting the names of the children, their parents, and their school districts and programs. Accordingly, the New York Education Law does not present a bar to disclosure.

### *Conclusion*

For the reasons stated above, I find that portions of Document 13 are protected by the attorney-client privilege. The remaining documents do not qualify for protection under either the attorney-client privilege or the deliberative process privilege and shall be produced to plaintiffs, along with the unprivileged portions of Document 13, within fifteen (15) days of this order, with appropriate redactions to preserve the confidentiality of children with disabilities, as described above.

SO ORDERED.

---

3. Defendant's argument for withholding the documents under the Education Law is as follows: "The County also asserts that references to a child who is receiving services under the Pre School Handicapped Program that is not a party to this proceeding are deemed confidential pursuant to the New York Educational Law." (Tokarski letter at 3.)