In re **DELPHI CORPORATION,**
et al., Debtors.

**Delphi Corporation, Delphi Automotive Systems LLC, and Delphi Automotive Systems Services LLC, Plaintiffs**

v.

**United States of America, Defendant.**

**No. 08 Civ. 4487(PKC).**

United States District Court,
S.D. New York.

April 19, 2011.

*MEMORANDUM AND ORDER*

P. KEVIN CASTEL, District Judge:

In this tax refund action, plaintiffs Delphi Corporation, Delphi Automotive Systems LLC, and Delphi Automotive Systems Services LLC (collectively, "Delphi") have moved to compel the United States to produce approximately 500 documents that the government has declined to produce invoking the deliberative process privilege. For the reasons below, Delphi's motion to compel is denied.

BACKGROUND

Delphi filed this action seeking a refund of taxes paid under the Federal Insurance Contribution Act ("FICA") on bonus payments that Delphi made to union members upon their ratification of new collective bargaining agreements in 1999 and 2003. The dispute centers on whether these payments constitute "wages" within the meaning of FICA and are therefore subject to the FICA tax. The documents which Delphi seeks relate to Revenue Ruling 2004-109, in which the IRS took the position that such bonuses were wages if made in connection with "the establishment, maintenance, furtherance, alteration, or cancellation of the employer-employee relationship or any of the terms and conditions thereof," unless the employee provides "clear, separate, and adequate consideration for the employer's payment that is not dependent upon the employer-employee relationship and its component terms and conditions." This ruling explicitly revoked the Treasury's prior position, set forth in Revenue Ruling 1958-145, that such bonus payments were not wages if they were "not predicated on continuing employment" and did not include "any requirement of subsequent service." The new ruling expressly considered the situation at issue in this case, where an employer paid a ratification bonus to employed union members when a collective bargaining agreement was ratified, and found that such a bonus constituted wages. This ruling concluded that a prior ruling, Revenue Ruling 1958-145, "erred in its analysis by failing to apply the [Internal Revenue] Code and regulations appropriately to the question of whether the bonus was wages.... Specifically, it failed to apply the correct definition of wages and to consider whether the bonus was paid in connection with establishing the employer-employee relationship." The agency also decided to apply the 2004 ruling retroactively to Delphi and similarly situated taxpayers.

The 2004 revenue ruling was undisputedly issued after the Delphi had filed its first refund claim in April 2003. Additionally, in 2000 and 2001, Ford Motor Company ("Ford") and General Motors ("GM") filed for refunds under the same theory, namely that

such ratification bonuses did not constitute income, and these claims were also pending when Revenue Ruling 2004–109 was issued.

In the present motion, Delphi seeks production of two categories of documents: (1) documents from the administrative record that relate to either the administrative refund claims filed by Delphi or other similarly situated taxpayers (including Ford and GM) or to the IRS's decision to revoke the 1958 Ruling prospectively for one category of taxpayers but retroactively for others; and (2) documents that were created after the substantive content of Revenue Ruling 2004–109 was finalized and approved. These requests are virtually identical to requests that were the subject of motions to compel by the taxpayers in two other cases. *See Ford Motor Co. v. United States*, 94 Fed.Cl. 211 (2010); *General Motors Corp. v. United States*, No. 07–14464, 2009 WL 5171806 (E.D.Mich. Dec. 23, 2009). Delphi originally submitted its motion in this Court on July 20, 2009. The Court directed the parties to resubmit briefing after the motions in the *Ford* and *General Motors* cases had been decided. Those motions have now been resolved, and the parties have fully briefed the issues. The Court assumes familiarity with the decisions by Judge Williams and Judge Roberts in *Ford* and *General Motors*, respectively.

DISCUSSION

■ The government opposes production based on the deliberative process privilege, which protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975) (citation and internal quotation marks omitted). The object of this privilege "is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) (citation and internal quotation marks omitted). If deliberative communications were not protected from discovery, there could be a chilling effect on candid discus-

sions among agency employees. The deliberative process privilege applies to inter- and intra-agency deliberative communications. *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 77 (2d Cir.2002).

■ The deliberative process privilege protects communications which are both (a) "pre-decisional," and (b) "deliberative." *Id.* at 76–77 (citing *Klamath*, 532 U.S. at 8, 121 S.Ct. 1060). "A document is predecisional when it is prepared in order to assist an agency decisionmaker in arriving at his decision." *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 482 (2d Cir.1999) (internal quotation marks and citations omitted). This includes "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* (internal quotation marks and citations omitted). However, "the privilege does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment." *Id.* (internal quotation marks omitted).

■ A document is deliberative when "it is actually … related to the process by which policies are formulated." *Id.* (internal quotation marks omitted). As noted, the privilege "focuses on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* (internal quotation marks omitted).

I. Applicability of the Privilege

The courts in *Ford* and *General Motors* both largely upheld the government's claims of deliberative process privilege, but Delphi argues that its own motion raises issues not addressed by either court. Delphi disputes the applicability of the deliberative process in the first instance, claiming that the privilege is not applicable where the litigation "involves a question concerning the intent of the governmental decisionmakers or the decisionmaking process itself." (Br. at 15.) Delphi argues that courts in a variety of contexts have concluded that the foregoing exception

extends to any type of case where the government's deliberations are "genuinely at issue." (*Id.* (internal quotation marks and citations omitted).) The deliberations are at issue here, according to Delphi, for three reasons. First, an administrative ruling does not deserve deference where it "was issued for the purpose of bolstering the agency's litigation position in pending cases" (Br. at 16); second, the degree of deference afforded to the ruling, if any, is determined under the standard established by *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), which requires examination of the government's motives in issuing the ruling; and third, that the Commissioner abused his discretion in applying the ruling prospectively to some taxpayers and retroactively to others, and the motivation behind the difference in treatment is relevant to the abuse of discretion inquiry.

■ Contrary to Delphi's argument, however, the *Ford* and *General Motors* Courts did consider these arguments. Delphi contends that its argument is different, because those courts considered the arguments under a balancing test rather than as an initial question of applicability. Under that balancing test, the courts consider five factors: (1) the relevance of the evidence the agency seeks to protect; (2) the availability of other evidence; (3) the seriousness of the litigation; (4) the role of the agency in the litigation; and (5) the possibility that disclosure will inhibit future candid debate among agency decision-makers. *Export–Import Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 109 (S.D.N.Y.2005).

■ This Court concludes that a claimed exception to the privilege, because the litigation "involves a question concerning the intent of the governmental decisionmakers or the decisionmaking process itself" (Br. at 15), is subject to the five factor balancing test. As Judge Kaplan has observed, "the difference between the parties as to whether the privilege is categorically inapplicable or dependent on a balancing of factors where the information sought is important to resolution of the dispute is more stylistic than substantive." *Five Borough Bicycle Club v. City of New York*, No. 07 Civ. 2448, 2008 WL 4302696, *1 (S.D.N.Y. Sept. 16, 2008). Indeed, the cases relied upon by Delphi simply involve logical applications of the balancing test. Where the deliberative or decisionmaking process is the "central issue" in the case, the need for the deliberative documents will outweigh the possibility that disclosure will inhibit future candid debate among agency decision-makers. *See In re Subpoena Duces Tecum*, 145 F.3d 1422, 1424 (D.C.Cir.1998) (privilege does not shield deliberations in case alleging FDIC fraudulently conveyed assets, because the plaintiff's cause of action "turns on" the FDIC's intent); *Dep't of Economic Development v. Arthur Anderson & Co.*, 139 F.R.D. 295, 299 (S.D.N.Y.1991) ("Where the adjudication of fraud claims turns upon issues of [the agency's] knowledge, reliance, and causation, direct evidence of the deliberative process is irreplaceable."); *Burka v. New York City Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y.1986) ("Where the decisionmaking process itself is the subject of the litigation, the deliberative privilege may not be raised as a bar against disclosure of critical information." (emphasis added)); *Grossman v. Schwarz*, 125 F.R.D. 376, 381 (S.D.N.Y.1989) ("In a civil rights action where the deliberative process of State or local officials is itself genuinely in dispute, privileges designed to shield that process from public scrutiny must yield to the overriding public policies expressed in the civil rights laws."); *United States v. Lake County Bd. Of Commissioners*, 233 F.R.D. 523, 526 (N.D.Ind.2005) ("[T]he deliberative process privilege simply does not apply in civil rights cases in which the defendant's intent to discriminate is at issue."); *Scott v. Board of Educ.*, 219 F.R.D. 333, 337–38 (D.N.J.2004) ("[I]nquiry into the Board's pre-decisional mental impressions and discussions is necessary to challenge the purported reason for Plaintiff's termination. Otherwise, the Board would be able to insulate itself from accountability from potential civil rights violations.") These cases reinforce the principles underlying the balancing test, that in some cases the relevance of the deliberative documents, and the plaintiff's corresponding need, will outweigh the interest in promoting candid agen-

cy discussion.[1]

Where the process itself is challenged, the plaintiff's need for the documents reflecting that process, under a balancing test, will often outweigh the government's interest in candid discussions. In this action Delphi is not challenging the decision-making process. Delphi is seeking a refund of FICA taxes based upon the definition of "wages," and seeks to reduce or eliminate the deference this Court gives to an applicable revenue ruling. The process behind the agency's issuance of that ruling is not the central issue here, nor is it being directly challenged in this suit, Delphi's "bootstrapping" argument notwithstanding. Therefore, I will analyze the government's claims of privilege under the five-factor balancing test.

## II. Balancing Test

■ Delphi argues that even under the balancing test, the documents are relevant because a ruling is not entitled to deference if it was motivated by a desire to bolster the agency's position. (Br. at 21.) Therefore, Delphi claims that the documents are relevant to establishing the agency's improper motive. The court in *Ford* considered this argument, and found that the need for the documents was " 'greatly minimized by an available alternative,' which gives Ford 'the evidence to make out [its] case without forcing a showdown on the claim of privilege.' " *Ford,* 94 Fed.Cl. at 220 (quoting *United States v. Reynolds,* 345 U.S. 1, 11, 73 S.Ct. 528, 97 L.Ed. 727 (1953)). The other available evidence in *Ford* was in part the government's own admission that there was a "link" between Ford's refund claims and the revenue ruling. Because "the timing and context of the Revenue Ruling [were] undisputed matters of public record, the determination as to whether the Revenue ruling deserves less deference because of its link to Ford's refund claim is a legal issue which can be resolved without resort to the Government's internal deliberations." *Ford,* 94 Fed.Cl. at 220.

Delphi argues that this case is distinguishable from *Ford* because here the government has not admitted to a "link" between the plaintiffs' refund claims and the revenue ruling. However, as Delphi recognizes, it is immaterial whether the government admits that there was a link between the revenue ruling and claims of this particular taxpayer or another taxpayer. The case cited by Delphi for the proposition that the ruling deserves less deference states: "A revenue ruling issued at a time when the I.R.S. is preparing to litigate is often self-serving and not generally entitled to deference by the courts." *AMP Inc. v. United States,* 185 F.3d 1333, 1338–39 (Fed.Cir.1999). If it is "self-serving" for the IRS to issue a revenue ruling to bolster its position in litigating against one taxpayer, then the revenue ruling is inherently "self-serving" regardless of the identity of the taxpayer making the challenge. The government's admissions in *Ford* and *General Motors* are of potential benefit to Delphi in its case and it therefore does not need access to the government's deliberative documents.

■ Delphi also argues that degree of deference due the ruling, if any, is determined under the *Skidmore* standard, which requires examination of the government's motives in issuing the ruling. In this Circuit, the amount of deference due to revenue rulings is an open question since the Supreme Court's decision in *United States v. Mead,* 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), *Robinson Knife Mfg. Co. v. C.I.R.,* 600 F.3d 121, 129 (2d Cir.2010) ("This Court has not decided on the proper level of deference owed to revenue rulings after [*Mead* ]."). However, even if Delphi is correct that *Skidmore* governs, I agree with the *Ford* Court that "applying the *Skidmore* factors ... does not require consideration of internal government deliberations." *Ford,* 94 Fed.Cl. at 219. The deference given to the ruling under the *Skidmore* standard requires an evaluation of "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and

---

1. To the extent language in the Decision and Order of Magistrate Judge Peebles in *New York v. Salazar* suggests otherwise, this Court respectfully disagrees. 701 F.Supp.2d 224, 237 n. 9 (N.D.N.Y.2010) ("Where [ ] the challenge is to the decision-making process, there is no balancing test the court must apply before requiring disclosure.").

later pronouncements, and all those factors which give it power to persuade." *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161. These factors are not dependent upon internal deliberations, but "ought to be apparent from the Revenue Ruling itself and relevant precedent." *Ford,* 94 Fed.Cl. at 219. Evaluation of the third *Skidmore* factor, "consistency with earlier and later pronouncements," likewise does not require internal deliberations, because the revocation of the 1958 Revenue Ruling appeared on the face of the 2004 ruling, and the merits of that revocation can be argued with public information. *See Ford,* 94 Fed.Cl. at 219–20.

Finally, Delphi claims that in order to argue that the agency's decision to apply the Revenue Ruling retroactively was an abuse of discretion, it needs the deliberative documents. Both the *Ford* and *General Motors* Courts considered and rejected this claim. *Ford,* 94 Fed.Cl. at 221; *General Motors,* 2009 WL 5171806, at *7. Whether there was an abuse of discretion can be determined from the public record and the agency's stated rationale for the decision, and "will not be informed by the internal deliberations of Government attorneys." *Ford,* 94 Fed.Cl. at 222.

Delphi does not make any specific argument with regard to the "Category 2" documents, which in earlier briefing it claimed were not pre-decisional because they are dated after the 2004 Revenue Ruling was issued. However, I will note that the *Ford* court examined and rejected this argument, *See Ford,* 94 Fed.Cl. at 222–24. The *General Motors* Court also examined these documents, and largely upheld the privilege. *General Motors,* 2009 WL 5171806, at *1. That Court concluded that seven of the Category 2 Documents were not privileged, and ordered them produced following an *in camera* inspection. *Id.* at *8–10. The government produced those documents to Delphi on September 28, 2010. (Br. at 14.) Because Delphi makes no further argument as to the remaining Category 2 documents, they need not be produced.

### III. Privilege Log and In Camera Review

Delphi claims that the government has not adequately established that the withheld documents are "deliberative," as required to assert the privilege. Delphi asserts that the privilege log and affidavits filed by the government are insufficient because they contain conclusory, self-serving language. Delphi therefore requests that the court make an *in camera* inspection of the five hundred documents to determine whether the government has properly invoked the privilege. I decline to require production of the documents for *in camera* review. Delphi does not identify any particular entries on the privilege log or affidavits which are insufficient, other than the seven Category 2 documents which were ordered produced in the *General Motors* case, and which Delphi already has access to. Delphi's general challenge to "conclusory" language in the privilege log is insufficient. The descriptions of the withheld documents are fulsome, providing more than enough information for Delphi to have made specific challenges to individual documents; Delphi, however, has not made any such challenges. (See Declaration of Margo L. Stevens (including 84 pages of document descriptions).) Furthermore, the *Ford* court reviewed a three-binder sample of the documents, and found that the privilege applied. *Ford,* 94 Fed.Cl. at 217–18. There is no need in this case for the documents to be reviewed *in camera.*

### CONCLUSION

For the foregoing reasons, Delphi's motion to compel (Document No. 51) is DENIED.

SO ORDERED.